# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEAH A. BILYEU,
     *Plaintiff-counter-defendant-*
          *Appellant,*

     v.

MORGAN STANLEY LONG TERM
DISABILITY PLAN; MORGAN STANLEY
LONG TERM DISABILITY PLAN
ADMINISTRATOR,
         *Defendants-Appellees,*

FIRST UNUM LIFE INSURANCE
COMPANY,
     *Defendant-counter-claimant-*
          *Appellee.*

No. 10-16070

D.C. No.
2:08-cv-02071-SRB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted
August 29, 2011—San Francisco, California

Filed June 20, 2012

Before: Raymond C. Fisher and Johnnie B. Rawlinson,
Circuit Judges, and Otis D. Wright, II, District Judge.*

Opinion by Judge Fisher;
Partial Concurrence and Partial Dissent by Judge Rawlinson

---

*The Honorable Otis D. Wright, II, United States District Judge for the
Central District of California, sitting by designation.

7245

## COUNSEL

Randolph G. Bachrach, Chandler, Arizona; Kevin Koelbel (argued), Chandler, Arizona, for the appellant.

Ann Martha Andrews, Kristina N. Holmstrom and Lawrence Kasten (argued), Lewis and Roca LLP, Phoenix, Arizona, for the appellee.

## OPINION

FISHER, Circuit Judge:

Leah A. Bilyeu appeals the district court's dismissal of her claim challenging the termination of her long-term disability benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132. Bilyeu also challenges the district court's grant of summary judgment in favor of First Unum Life Insurance Company (Unum) on Unum's counterclaim for restitution of overpaid benefits. We have jurisdiction under 28 U.S.C. § 1291, and we vacate and remand.

We vacate the judgment in favor of Unum on Bilyeu's claim for denial of benefits. We hold that the district court abused its discretion by dismissing this claim for failure to exhaust administrative remedies. The exhaustion requirement should have been excused because Bilyeu acted reasonably in light of Unum's ambiguous communications and failure to engage in a meaningful dialogue.

We also vacate the judgment in favor of Unum on Unum's counterclaim for reimbursement of overpaid long-term disability benefits. Unum has not shown that it is seeking equitable relief because it has not satisfied the elements for an equitable lien by agreement, which is the only form of equitable relief Unum has asserted. These elements are not satisfied because the particular fund subject to the lien, having been dissipated, is no longer in Bilyeu's possession. Unum thus seeks only the imposition of personal liability against Bilyeu, to be paid out of her general assets. That is quintessentially legal, rather than equitable, relief.

## I. BACKGROUND

Bilyeu was employed by Discover Financial Services from 1987 through April 2004. Compl. ¶ 8. Morgan Stanley Long-Term Disability Plan (the Plan) provides benefits for long-term disabilities to Discover employees. *Id.* ¶¶ 4-5. Unum is the Plan's claim administrator, and also the insurer and payor of Plan benefits. *Id.* ¶¶ 6-7.

Alleging she suffered from several medical conditions that prevented her from materially performing the duties of any occupation, Bilyeu filed a long-term disability (LTD) claim with Unum in April 2004. *Id.* ¶¶ 9-10. These conditions included Behçet's disease, fatigue and anxiety. *Id.* ¶¶ 12-18; Clerk's Record 13-2 at 3. Unum approved the claim in October 2004. Compl. ¶ 11. Under the Plan, benefits for disabilities arising from mental illness are limited to 24 months. *Id.* ¶ 19. Unum concluded that Bilyeu's disability was subject to the mental illness limitation. *Id.* Bilyeu disputed that conclusion. *Id.* ¶¶ 12-20.

Nearing the 24-month deadline, Dr. Sharon Hogan, a medical consultant for Unum, called Bilyeu's treating physician, Dr. Kenneth Proefrock, to discuss her medical condition. Clerk's Record 15.1 at 5-7. On December 6, 2006, Dr. Hogan sent a summary of the conversation to Dr. Proefrock, asking

him to respond within 10 business days if he believed the letter inaccurately summarized their conversation. *Id.* at 6. The letter reflected disagreement between Dr. Hogan and Dr. Proefrock regarding the nature of Bilyeu's limitations. Dr. Hogan believed "Bilyeu's fatigue in large part arises from her anxiety and depression, since her Behçet's is not very active." *Id.* at 6. It was Dr. Proefrock's opinion, however, "that her fatigue is mainly physical." *Id.* Dr. Hogan also believed that Bilyeu "should have full-time sedentary work capacity," an assessment with which Dr. Proefrock disagreed. *Id.* at 5; Clerk's Record 13-2 at 3.

On December 27, 2006, Unum sent Bilyeu a termination of benefits letter. Clerk's Record 13-2. Unum terminated benefits under the Plan provision limiting disability benefits due to mental illness to 24 months. *Id.* at 3. The letter reported that, although "fatigue can result from Behcet's, . . . your anxiety and depression are the more likely causes of your fatigue." *Id.* It said, "because your claim is subject to a 24 month mental [illness] limitation and we have now provided 24 months of benefits, we will stop paying benefits on your claim as of December 03, 2006 and your claim will be closed at this time." *Id.* at 4. The letter also recorded Unum's conclusion that "you have full time sedentary work capacity" and thus "no longer meet the definition of disability from a physical perspective." *Id.* The letter noted Dr. Proefrock's contrary determination that Bilyeu was unable to return to work. *Id.* at 3.

The letter then advised Bilyeu:

> If you have additional information to support your request for disability benefits, it must be sent to my attention for further review at the address noted on this letterhead, within 180 days of the date you receive this letter.
>
> However, if you disagree with our determination and want to appeal this claim decision, you must submit

a written appeal. This appeal must be received by us within 180 days of the date you receive this letter.

*Id.* at 4. The "address noted on this letterhead" was:

First Unum Life Insurance Company
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: 1-800-858-8843
Fax: 1-800-447-2498
www.unumprovident.com

*Id.* at 1.

After receiving Unum's termination of benefits letter, Bilyeu asked Dr. Proefrock to respond to the letter. Compl. ¶ 22. Dr. Proefrock did so, writing a letter to Unum on April 19, 2007. *Id.* ¶ 23. Dr. Proefrock's letter was addressed "To Whom It May Concern" and, it appears, faxed to 1-800-447-2498 — the number listed in the letterhead of Unum's December 27, 2006 termination of benefits letter as the place to send "additional information to support your request for disability benefits." Clerk's Record 15-1 at 2-4.

Unum construed Dr. Proefrock's letter as "new information," but concluded that it did not "change [the] prior decision" to terminate benefits. *Id.* at 9. Unum, however, never communicated this conclusion to Bilyeu or, for that matter, contacted Bilyeu or Dr. Proefrock at all in response to the letter. Compl. ¶ 27.

In November 2008, Bilyeu filed a complaint against Unum, alleging that Unum wrongfully terminated benefits under the 24-month mental illness limitation because "[t]he substantial weight of the medical opinion contained in the claim file reasonably supports a finding that [her] disability is not due to 'mental illness,' rather, it is due to an autoimmune condition

which was exacerbated by anxiety and mental/emotional stressors in [her] life." *Id.* ¶ 20. The complaint sought a reinstatement of benefits under 29 U.S.C. § 1132(a)(1)(B). *Id.* at ¶ 44.

Unum filed an answer and a counterclaim. In its counterclaim, Unum sought reimbursement of overpaid long-term disability benefits. Unum alleged that it had paid Bilyeu LTD benefits subject to her promise to reimburse Unum for any overpayment arising from her receipt of disability benefits from any other source, including social security disability benefits. Answer and Counterclaim ¶¶ 5-10. Bilyeu subsequently received an award of social security benefits, resulting in an overpayment of LTD benefits in the amount of $36,597.82. *Id.* ¶¶ 11-12. Unum's counterclaim sought to recover the overpayment from Bilyeu. Specifically, Unum asserted a claim for equitable relief under ERISA, 29 U.S.C. § 1132(a)(3), as well as a claim for breach of contract. *Id.* at 7-8.

Unum then moved to dismiss Bilyeu's denial-of-benefits claim for failure to exhaust administrative remedies. Clerk's Record 13. In that motion, Unum contended that the December 2006 termination of benefits letter required Bilyeu to file a written appeal within 180 days, which she failed to do. *Id.* Unum thus sought dismissal of Bilyeu's claim. The district court granted the motion, concluding that Bilyeu failed to exhaust administrative remedies and dismissing Bilyeu's claim with prejudice. Clerk's Record 21 at 7.

Unum then filed a motion for summary judgment on its counterclaim for reimbursement of overpaid benefits. Clerk's Record 28. Unum argued that it was entitled to relief under ERISA because it "has an equitable lien by agreement over the long-term disability benefits that it overpaid to Bilyeu." *Id.* at 1. Bilyeu opposed the motion, arguing that Unum could not satisfy the requirements for an equitable lien by agreement because it could not establish that the overpaid LTD

benefits remained in her possession. Clerk's Record 30 at 2. The parties stipulated that, by the time Bilyeu was awarded social security benefits, "she had dissipated at least a portion of her LTD benefits." Joint Statement of Facts ¶ 15. The district court granted Unum's motion, and it directed the clerk of court "to enter judgment in the amount of $36,597.82 in favor of [Unum]." Clerk's Record 32 at 6.

The court entered judgment and Bilyeu timely appealed. Clerk's Record 33, 35.

## II. STANDARD OF REVIEW

The district court dismissed Bilyeu's denial-of-benefits claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Both parties, however, have relied on matters outside the pleadings. Consistent with circuit practice addressing exhaustion, we construe Unum's motion as an unenumerated motion to dismiss. In addressing that motion, a court may look beyond the pleadings and decide disputed issues of fact. *See Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 881 (9th Cir. 2011) (en banc); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). We review for an abuse of discretion a district court's refusal to grant an exception to ERISA's exhaustion requirement. *See Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011). We review de novo the grant or denial of summary judgment. *See Russell Country Sportsmen v. U.S. Forest Serv.*, 668 F.3d 1037, 1041 (9th Cir. 2011).

## III. BILYEU'S DENIAL-OF-BENEFITS CLAIM: EXHAUSTION OF ADMINISTRATIVE REMEDIES

We hold that the district court abused its discretion by dismissing Bilyeu's denial-of-benefits claim for a failure to exhaust administrative remedies.

**[1]** "ERISA itself does not require a participant or beneficiary to exhaust administrative remedies in order to bring an action under § 502 of ERISA, 29 U.S.C. § 1132." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008). We have, however, adopted a "prudential exhaustion requirement." *Id.* Thus, "[a]s a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Barboza*, 651 F.3d at 1076. "However, when an employee benefits plan fails to establish or follow 'reasonable claims procedures' consistent with the requirements of ERISA, a claimant need not exhaust because his claims will be deemed exhausted." *Id.* (quoting 29 C.F.R. § 2560.503-1(*l*)). ERISA, moreover, requires "a meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).

**[2]** Here, Unum's December 27, 2006 termination of benefits letter advised Bilyeu of two courses of action, either of which she was required to undertake within 180 days: (a) providing "additional information to support your request for disability benefits" or (b) "if you disagree with our determination and want to appeal this claim decision, you must submit a written appeal." After receiving Unum's letter, Bilyeu asked her treating physician, Dr. Proefrock, to respond, and he did so, writing a letter to Unum on April 19, 2007 — well within the 180-day window required in Unum's letter. Dr. Proefrock addressed his letter "To Whom It May Concern" and faxed it to 1-800-447-2498 — the number listed in the letterhead of Unum's December 27, 2006 termination of benefits letter as the place to send "additional information to support your request for disability benefits."

Unum construed Dr. Proefrock's letter as "new information," but concluded that it did not "change [the] prior decision" to terminate benefits. Unum, however, never communicated this conclusion to Bilyeu or, for that matter, contacted Bilyeu or Dr. Proefrock at all in response to the let-

ter. Meanwhile, according to Unum, Bilyeu's deadline to appeal expired sometime after June 25, 2007, 180 days after the termination of benefits letter.

Under the circumstances of this case, exhaustion must be excused. Bilyeu contends that she read the termination of benefits letter as presenting two options — she could either (a) submit additional information or (b) file a written appeal. The letter was ambiguous, so Bilyeu's reading was not unreasonable. On the contrary, given that it would have made no sense to appeal the adverse benefits decision while simultaneously submitting additional medical information from her physician, as she was invited to do by Unum, her reading of the letter was entirely appropriate.

We recognize that the letter is also susceptible to the reading proffered by Unum — that Bilyeu was required to file an appeal within 180 days *even if* she submitted additional medical information. But the letter could have been, and should have been, much clearer on this point. Bilyeu was not represented by counsel and, we presume, had no legal training. She should not be saddled with a loss of her legal rights because she misconstrued a confusingly worded communication from her plan's claims administrator. *Cf. Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870 (9th Cir. 2008) ("[The insurer's] communications with [the insured] and her doctors are hardly a model of clarity; they certainly do not explain 'in a manner calculated to be understood by the claimant' what [she] must do to perfect her claim."); *White v. Jacobs Eng'g Grp. Long Term Disability Benefit Plan*, 896 F.2d 344, 350 (9th Cir. 1990) ("When a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered."). A communication from a claims administrator to a plan participant should clearly apprise her of her rights and obligations under the plan. Unum's letter did not do so. Nor did Bilyeu receive timely notice that Unum

considered her reading of the letter to be wrong, because Unum never responded to Dr. Proefrock's timely letter.[1]

We hold that the district court abused its discretion by barring Bilyeu's claim.

## IV.   UNUM'S COUNTERCLAIM

### A.   Bilyeu Waived Her Argument That Unum Lacks Statutory Standing as a Fiduciary

Bilyeu argues for the first time on appeal that Unum lacks standing to seek equitable restitution under ERISA because Unum is not a plan "fiduciary." This is a challenge to Unum's statutory standing. *Cf. Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 971 (9th Cir. 2012) ("Whether [the plaintiff] is a participant for purposes of ERISA is a substantive element of his claim, not a prerequisite for subject matter jurisdiction."); *Harris v. Amgen, Inc.*, 573 F.3d 728, 732 n.3 (9th Cir. 2009) (same); *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) (same); *Parker v. Bain*, 68 F.3d 1131, 1138 (9th Cir. 1995) (treating a plaintiff's status as a "fiduciary" under ERISA as a question of statutory standing).

Unlike constitutional standing, which is jurisdictional, we presume that statutory standing may be waived. *See Leeson*, 671 F.3d at 975 n.12; *cf. Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000) (distinguishing constitutional standing from prudential standing, and holding that "a party waives objections to non-

---

[1]We disagree with the dissent's conclusion that the outcome of this case is controlled by *Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1481-83 (9th Cir. 1995). In *Diaz*, the employee failed to follow the plan's unambiguous instructions to file an appeal within 60 days after a decision denying benefits. *Diaz* involved neither ambiguous communications nor a failure to engage in a meaningful dialogue.

constitutional standing not properly raised before the district court"); *Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535, 538 (9th Cir. 1995) (same). By failing to raise this argument before the district court, Bilyeu thus waived her challenge to Unum's standing as a fiduciary under ERISA.

## B. The District Court Improperly Awarded Legal Relief

Unum paid Bilyeu long-term disability benefits pursuant to Bilyeu's agreement to reimburse Unum "any overpayment resulting from my receipt of benefits from other sources." Joint Statement of Facts ¶ 12. The agreement stated in pertinent part:

> Please pay me the disability benefit with no reduction for amounts received by other sources until a final determination of my eligibility to receive those benefits is made. I understand that this may result in an overpayment by the Insurer. I agree to notify the Insurer within 48 hours of receiving notice of any and all decisions, to supply the Insurer with a copy of the final decision, and to repay any overpayment incurred as a result of receiving any other benefits from those sources specified in the policy. . . .

> By selecting [this] Option . . . , I understand that the Insurer has agreed to pay me an unreduced benefit based upon my written promise herein to pay the Insurer any overpayment resulting from my receipt of benefits from other sources, as outlined in my policy. I agree to reimburse the Insurer any such overpayment within thirty (30) days of my receipt of such funds.

> If I fail to pay the Insurer the overpayment within the thirty (30) day period specified above, I understand that the Insurer may reduce future payments under the policy in order to recover the overpaid benefits.

I also understand that I shall be liable to the Insurer for the full amount of any such overpayment, plus applicable statutory interest, and for all reasonable costs (including attorney's fees) of collection of the overpaid benefits.

*Id.* Bilyeu subsequently received social security disability benefits, but did not reimburse Unum. *Id.* ¶¶ 16-19. Unum filed a counterclaim for reimbursement of the overpaid benefits.

**[3]** Ordinarily, a contracting party in Unum's position would file a claim for breach of contract and seek relief in the form of a judgment for money damages.[2] Under ERISA, however, a plan fiduciary such as Unum can seek only "equitable relief" from a plan participant such as Bilyeu. 29 U.S.C. § 1132(a)(3)(B). Section 1132(a) provides:

A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a) (emphasis added). Unum therefore cannot sue for damages under ERISA; it must show that it is seeking equitable relief.

Unum contends it has made this showing because it is seek-

---

[2]Unum has, in fact, asserted a state-law claim for breach of contract. Clerk's Record 5 at 7-8 (Answer and Counterclaim); Clerk's Record 28 at 8 (motion for summary judgment). Bilyeu contends Unum has abandoned that claim and that, in any event, the claim is preempted by ERISA. Clerk's Record 30 at 9. Unum's contract claim has not been adjudicated, and we express no opinion as to its merits.

ing an equitable lien by agreement. Clerk's Record 28 at 1, 6-7; Answering Brief at 36. The Supreme Court has recognized an equitable lien by agreement as a form of "equitable relief" authorized by § 1132(a)(3)(B). *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 364-65 (2006).[3] The only question, therefore, is whether Unum has satisfied the requirements for an equitable lien by agreement in this case. We begin by summarizing *Sereboff*.

The Sereboffs were beneficiaries of a health insurance plan governed by ERISA and administered by Mid Atlantic. *See id.* at 359. The plan provided for payment of covered medical expenses, subject to an "Acts of Third Parties" provision requiring a beneficiary to reimburse Mid Atlantic in the event of recovery from a third-party tortfeasor. *See id.* This provision applied when a beneficiary was sick or injured as a result of the act or omission of another person or party, and required a beneficiary who received benefits under the plan for such injuries to reimburse Mid Atlantic for those benefits from all recoveries from a third party, whether by lawsuit, settlement

---

[3]An equitable lien by agreement is a traditional form of equitable relief. According to Pomeroy's *Treatise on Equity*,

> The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property.

4 John Norton Pomeroy, *A Treatise on Equity* § 1235, p. 696 (5th ed. 1941); *see also* Restatement (Third) of Restitution § 56 cmt. d (2011) ("[T]he failure to transfer *a promised share of an identifiable* fund may justify specific relief to the claimant, frequently accomplished via equitable lien.").

or otherwise. *See id.* After the Sereboffs were injured in an automobile accident and the plan paid their medical expenses, the Sereboffs recovered a tort settlement from third parties. *See id.* at 360. Mid Atlantic filed suit under ERISA seeking to recover their medical payments from the Sereboffs' tort recovery. *See id.* The Sereboffs agreed to set aside from the tort recovery a sum equal to the amount Mid Atlantic claimed, and to preserve that sum in a segregated investment account pending the outcome of the suit. *See id.*

The Supreme Court held that Mid Atlantic could enforce the terms of the Acts of Third Parties provision through an equitable lien by agreement — "the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.* at 363-64 (alteration in original) (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)) (internal quotation marks omitted). Sereboff's promise to reimburse Mid Atlantic from any recovery from a third party created a lien upon that recovery as soon as it was created. *See id.* at 364. Mid Atlantic was allowed to follow a portion of the tort recovery into the Sereboffs' hands, and to impose upon that portion an equitable lien. *See id.*

The Court also made clear that, to satisfy the requirements for an equitable lien by agreement, Mid Atlantic was not required to trace the funds in the Sereboffs' tort recovery *back to Mid Atlantic's own possession*. *See id.* at 364-65. The Sereboffs had argued that "strict tracing rules" applied to a claim for equitable restitution. *See* Reply Brief for Petitioners at 8-11, *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006) (No. 05-260), 2006 WL 717048 at *8-11. They maintained that Mid Atlantic could not satisfy those tracing rules because its "claim is not for return of particular money that the Plan paid to the Sereboffs," but rather was a claim to "recover new money paid out by third parties." *Id.* at 9.

The Court declined to say whether a rule requiring the plaintiff to trace the fund or property back to the plaintiff's

own possession would apply to a claim for equitable restitution. That question was beside the point, because Mid Atlantic was seeking an equitable lien by agreement, not equitable restitution. With regard to an equitable lien by agreement, the Court held that "no tracing requirement *of the sort asserted by the Sereboffs* applies." *Sereboff*, 547 U.S. at 365 (emphasis added). The Court's decision in *Barnes* confirmed that this was the case: "The plaintiffs in *Barnes* could not identify an asset they originally possessed, which was improperly acquired and converted into property the defendant held, yet that did not preclude them from securing an equitable lien" over a specifically identified fund. *Id.* The Court did not purport to do away with the long established principle that an equitable lien by agreement applies only to "*particular* funds or property *in the defendant's possession.*" *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1879 (2011) (second emphasis added) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)) (internal quotation marks omitted).

**[4]** As relevant here, we read *Sereboff* as establishing at least three criteria for securing an equitable lien by agreement in an ERISA action. *First*, there must be a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party. *Second*, the reimbursement agreement must "specifically identif[y] a particular fund, distinct from the [beneficiary's] general assets," from which the fiduciary will be reimbursed. *Id.* at 364. *Third*, the funds specifically identified by the fiduciary must be "within the possession and control of the [beneficiary]." *Id.* at 363.

**1.** Here, the first criterion is clearly satisfied. Bilyeu does not dispute that she promised to reimburse Unum for an overpayment of long-term disability benefits arising from her receipt of benefits from other sources, including social security disability benefits.

**2.** It is less clear whether the second criterion is satisfied. Unum contends that the reimbursement agreement specifically identified the overpaid long-term disability benefits as the particular fund, distinct from Bilyeu's general assets, from which it is to be reimbursed. In Unum's view, once Bilyeu received her social security disability benefits, the specifically identified fund — the overpaid long-term disability benefits — came into existence, and Unum was allowed to impose a lien against that fund. This argument is plausible, but problematic. Unlike the third party tort recovery in *Sereboff* and the contingency fee in *Barnes*, the overpaid disability benefits are not a particular *fund*, but a specific amount of money encompassed *within* a particular fund — the long-term disability benefits Unum paid to Bilyeu. As an amount of money, the overpayment is specific. As property or as a fund, however, the overpayment is lacking in specificity because it is an undifferentiated component of a larger fund. The overpayment has never existed as a distinct object or fund. *See* 53 C.J.S. *Liens* § 19 (2012) ("In order that an equitable lien may arise by contract, the agreement of the parties must deal with some *specific property*, and it is also essential that the property or fund intended to be appropriated or charged *should be identified or described with a reasonable degree of certainty*." (emphasis added) (footnote omitted)); 4 John Norton Pomeroy, *A Treatise on Equity* § 1235, p. 696 (5th ed. 1941) (explaining that an equitable lien applies to "some *particular property*, real or personal, *or fund*, therein described or identified" (emphasis added)); *Sereboff*, 547 U.S. at 364 (holding that the requirements for an equitable lien by agreement were satisfied because the "plan specifically identified *a particular fund*" (emphasis added)); *Barnes*, 232 U.S. at 121 (holding that "a contract to convey a *specific object* even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing" (emphasis added)).

Unum's reimbursement agreement would have avoided these problems if, consistent with *Sereboff*, it had identified the third party recovery — here, Bilyeu's social security dis-

ability benefits — as the particular fund enlisted to serve as security for the overpayment of benefits. Of course, that would not have worked in this case: Under the Social Security Act, Bilyeu could not assign her social security benefits, and Unum could not attach them. *See* 42 U.S.C. § 407(a).[4] "The purpose of the exemption created by Congress in 42 U.S.C. § 407 is to protect social security beneficiaries from creditors' claims." *Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir. 1985). By identifying the overpaid benefits as the particular fund, rather than the social security benefits, Unum attempts to circumvent the congressional prohibition on assignment and attachment of social security benefits.

[5] **3.** Even assuming that Unum could satisfy the second criterion, Unum has not satisfied the third criterion — the requirement that the specifically identified fund be within Bilyeu's "possession and control." *Sereboff*, 547 U.S. at 363. In *Sereboff*, Mid Atlantic sought to recover specifically identified funds that were "within the possession and control of the Sereboffs, . . . set aside and preserved in the Sereboffs' investment accounts." *Id.* (alteration and internal quotation marks omitted). That the funds were extant, and in the Sereboffs' possession, was essential to the Court's holding that Mid Atlantic was seeking equitable, rather than legal, relief. *See id.* at 362-63.

Here, by contrast, Bilyeu asserts, and Unum has not refuted, that Bilyeu has spent the overpaid benefits.[5] Unum,

---

[4]Section 407 states:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).

[5]The burden to show that the overpaid benefits remain in Bilyeu's possession presumably falls on Unum. *See* Restatement (First) of Restitution

therefore, is not seeking to recover a specified fund that is preserved and in Bilyeu's possession. Instead, Unum is seeking a judgment requiring Bilyeu to pay money out of her general assets. In *Sereboff*'s words, Unum is seeking "the imposition of personal liability," rather than enforcement of an "equitable lien on particular property." *Id.* at 362 (quoting *Knudson*, 534 U.S. at 214) (internal quotation marks omitted). This is quintessentially legal, rather than equitable, relief. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of *legal* relief.").

We recognize that a number of circuits have interpreted *Sereboff*'s discussion of tracing rules as a signal that a fiduciary can assert an equitable lien — presumably against a beneficiary's general assets — even if the beneficiary no longer possesses the specifically identified funds. *See Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 194 n.14 (3d Cir. 2011) (opining that *Sereboff* "strongly implies that . . . the defendant need not possess the property at the time relief is sought in order for the relief to be equitable — any post-agreement possession will suffice"); *Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d 215, 231 (1st Cir. 2010) (holding that the insurer's claim was for equitable relief under § 1132(a)(3), even though the insurer "has not identified a specific account in which the funds are kept or proven that they are still in [the participant's] possession," because "the contract between [the participant] and [the insurer] put [the participant] on notice that she would be required to reimburse [the insurer] for an amount equal to what she might get from Social Security"); *Longaberger Co. v. Kolt*, 586 F.3d 459, 466 (6th Cir. 2009) (under ERISA, "an equitable lien by agreement does not

§ 215 cmt. b (1937) ("A person whose property is wrongfully taken by another is not entitled to priority over other creditors unless he proves that the wrongdoer not only once had the property or its proceeds, but still has the property or its proceeds or property in which the claimant's property or its proceeds have been mingled indistinguishably."); *accord Epolito v. Prudential Ins. Co. of Am.*, 737 F. Supp. 2d 1364, 1382 (M.D. Fla. 2010).

require tracing or maintenance of a fund in order for equity to allow repayment"); *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008) (allowing a claim under "29 U.S.C. § 1132(a)(3) even if the benefits it paid [the beneficiary] are not specifically traceable to [the beneficiary's] current assets because of commingling or dissipation"); *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 44-45 (6th Cir. 2007) (unpublished) (holding that the participant's "undisputed averment that the overpayments had been dissipated would seem to be of no avail," because *Sereboff* "clarified that to establish an equitable lien by agreement, strict tracing of funds is not required"). *But see Epolito v. Prudential Ins. Co. of Am.*, 737 F. Supp. 2d 1364, 1380 (M.D. Fla. 2010) ("[T]his Court is not convinced that *Sereboff*'s holding eliminates the requirement that the insurer identify an intact, identifiable *res*, in the possession of the insured, on which it seeks to impose the equitable lien."); *cf. Amschwand v. Spherion Corp.*, 505 F.3d 342, 346 (5th Cir. 2007) ("[T]he *sine qua non* of restitutionary recovery available under § 502(a)(3) is a defendant's possession of the disputed res."); *id.* at 347 ("[P]ossession is the key to awarding equitable restitution in the form of a constructive trust or equitable lien.").

We are unpersuaded by the view of those other circuits. The tracing issue in *Sereboff* was whether Mid Atlantic could obtain an equitable lien against specifically identified funds when Mid Atlantic had never possessed those funds itself — an issue that has no relevance here. *See Sereboff*, 547 U.S. at 364-65. Nothing in *Sereboff* suggests that a fiduciary can enforce an equitable lien against a beneficiary's *general assets* when specifically identified funds are no longer in a beneficiary's possession.

This conclusion — that the fiduciary must recover from specifically identified funds *in the beneficiary's possession*, rather than from general assets — is consistent not only with *Sereboff* but also with the Supreme Court's decisions in *Knudson* and *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011).

In *Knudson*, the Court said, "where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant." 534 U.S. at 213-14 (alterations and internal quotation marks omitted) (quoting Restatement (First) of Restitution § 215 cmt. a, p. 867 (1936)). In *Amara*, decided just last Term, the Court once again underscored that, "traditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were '*particular* funds or property *in the defendant's possession*.' " 131 S. Ct. at 1879 (second emphasis added) (quoting *Knudson*, 534 U.S. at 213). Here, Unum has arguably identified a particular fund — the overpaid benefits — but that fund is no longer in Bilyeu's possession.

Unum's argument that an equitable lien can be enforced against general assets when the specifically identified property has been dissipated finds no support in the traditional doctrine governing equitable liens by agreement. *See* 4 Pomeroy, *A Treatise on Equity* § 1235, p. 696 (5th ed. 1941) (explaining that an equitable lien may be enforced when the specifically identified property is *in the hands* of the contractor — or in the hands of a subsequent possessor with notice of the lien, a qualification not relevant to Bilyeu's case). If the property or fund subject to the lien (or proceeds to which the property or fund can be traced), are no longer in the defendant's possession, then there is no *res* against which the equitable lien can be enforced. *See* 53 C.J.S. *Liens* § 46 (2012) ("[A] lien that is not satisfied voluntarily may be enforced by an action to foreclose, in which a court may order the property securing the debt or obligation to be sold and its proceeds applied on the demand of the creditor in whose favor the lien exists." (footnote omitted)); Restatement (First) of Restitution § 161 cmt. e (1937) ("An equitable lien can be established and enforced only if there is some property which is subject to the lien. Where property is subject to an equitable lien and the

owner of the property disposes of it and acquires other property in exchange, he holds the property so acquired subject to the lien . . . . So also, where the property which is subject to the lien is mingled with other property in one indistinguishable mass, the lien can be enforced against the mingled mass . . . . *Where, however, the property subject to the equitable lien can no longer be traced, the equitable lien cannot be enforced . . . .*" (emphasis added)); *id.* § 215(1) ("[W]here a person wrongfully disposes of the property of another but the property cannot be traced into any product, the other has merely a personal claim against the wrongdoer and cannot enforce a constructive trust or lien upon any part of the wrongdoer's property."); *id.* § 215 cmt. a ("[I]f it is shown that the property or its proceeds have been dissipated so that no product remains, . . . the claimant cannot enforce . . . an equitable lien upon other property of the wrongdoer, and has only a personal claim against the wrongdoer."); Restatement (Third) of Restitution § 58 cmt. c (2011) ("To obtain a property interest in something other than the original asset, and not merely restitution of its value in money, the claimant must normally show that the property claimed is the traceable product of the original asset."); *id.* § 60(3) ("A claimant who is entitled to restitution but who is unable to identify specific property from which restitution is available has a remedy via money judgment that ranks equally with the claims of general creditors.").

In sum, although the district court's decision may have produced an equitable result, the court erred because Unum has not shown that it is seeking equitable relief. We remand, affording Unum the opportunity to establish that it has identified a particular fund (the second criterion) and that the overpaid long-term disability benefits, or assets to which the overpaid benefits can be traced, remain in Bilyeu's possession (the third criterion). *See* 53 C.J.S. *Liens* § 24 (2012) ("An equitable lien for advances may exist where advancements of money or funds are made on the faith of certain property, real or personal, under an agreement or circumstances showing

that it was the intention of the parties to pledge such property as security for the advancements, *provided the specific property or its proceeds on which the advancements were invested can be traced or identified*." (emphasis added) (footnote omitted)); 2 Dan B. Dobbs, *Law of Remedies* § 6.1(4) (2d ed. 1993) (discussing enforcement of an equitable lien in the case of commingled funds).[6]

There is much to be said for maintaining uniformity among the federal circuits, and we should strive to do so when we can. *See Am. Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002). ERISA, however, provides only for "equitable relief," 29 U.S.C. § 1132(a)(3)(B), and Unum has not shown that the relief granted here — "judgment in the amount of $36,597.82 in favor of First Unum Life Insurance Company," to be paid out of Bilyeu's general assets — falls into that category. The district court did not identify a particular fund and impose upon it an equitable lien. Instead, the district court's order reads like a money judgment, which is what it is. As we explained in *Bonneville Power Administration v. Washington Public Power Supply System*, 956 F.2d 1497 (9th Cir. 1992),

---

[6]The kind of tracing we discuss here is distinct from the theory of tracing rejected in *Sereboff*. The issue in *Sereboff* was whether a plaintiff is required to trace the specific property or particular fund back to the plaintiff's own possession. *Sereboff* makes clear that that sort of tracing is not required for an equitable lien by agreement. *See Sereboff*, 547 U.S. at 364-65. The kind of tracing we refer to here simply allows a plaintiff to trace the specific property or a particular fund when the defendant has either commingled it with the defendant's other assets or exchanged it for other property *See* 53 C.J.S. *Liens* § 29 (2012) ("[W]here the owner of property subject to a lien commingles it with other property alike in quality and value, the lien is not extinguished so long as there is on hand sufficient property alike in quality and value to satisfy the lien."); *id.* § 49 ("If the property on which an equitable lien is held has been sold before foreclosure, the court can trace the funds from the sale and impress a lien upon any property acquired with the proceeds."); Restatement (Third) of Restitution §§ 58-59 (2011) (describing tracing principles as applied to equitable liens and constructive trusts).

> "An equitable lien can be established and enforced only if there is some property which is subject to the lien." In this case there is no "identifiable res" on which a lien can be imposed, because the allegedly misallocated funds have been disbursed. Therefore the court erred in granting . . . a lien on funds.

*Id.* at 1507 (citation omitted) (quoting Restatement (First) of Restitution § 161 cmt. e (1937)).[7] We are bound to adhere to that principle today.

## V.   CONCLUSION

The district court abused its discretion by dismissing Bilyeu's denial-of-benefits claim for a failure to exhaust administrative remedies. The court also erred when it concluded that Unum had satisfied the requirements for an equitable lien by agreement. The judgment of the district court is therefore vacated and the case is remanded for further proceedings.

**VACATED AND REMANDED.** Costs of appeal are awarded to Bilyeu.

---

[7]We recognize that "the fact that . . . relief takes the form of a money payment does not [necessarily] remove it from the category of traditionally equitable relief." *Amara*, 131 S. Ct. at 1880. Here, however, Unum has not advanced a specific theory under which the money judgment against Bilyeu falls within a traditional form of equitable relief. Whether some form of equitable relief might be available here, as well as whether Unum could reformulate its reimbursement agreement to resolve the problems presented here, are thus questions beyond the scope of this appeal.

RAWLINSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Plaintiff Leah Bilyeu (Bilyeu) waived her argument that Unum Life Insurance Company (Unum) lacks statutory standing. I respectfully disagree on all other issues.

Bilyeu argues on appeal, as she did before the district court, that a fax sent by her physician Dr. Proefrock to Dr. Hogan, the physician for Unum, satisfied the exhaustion requirement under the Employee Retirement Income Security Act of 1974 (ERISA). However, the letter denying Bilyeu's claim explicitly directed her that if she disagreed with the determination denying disability benefits, she was required to submit an appeal in writing to: First Unum Life Insurance Company at PO Box 100158, Columbia, SC 29202-3158, Fax: 1-800-447-2498 www.unumprovident.com.

Rather than submitting an appeal as directed, Bilyeu elected to provide additional information pursuant to a different paragraph of the denial letter. This information was sent to Unum's physician advisor rather than to the benefits center as directed in the denial letter from Unum.

The district court found that because the letter from Bilyeu's physician to Unum's physician did not comply with the appeal procedure, Bilyeu did not exhaust the administrative remedies available under the ERISA Plan. We review this determination for an abuse of discretion. *See Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995).

A district court abuses it discretion only if the district court applied an incorrect legal rule in view of the relief requested or made a factual finding that was "illogical, implausible, or without support in inferences that may be drawn from the

record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (footnote reference omitted).

The district court explained its ruling by observing that the letter from Bilyeu's physician did not indicate that Bilyeu desired to appeal the Plan's decision. *See District Court Opinion*, p. 6. The district court also noted that the letter from Bilyeu's physician was faxed to Unum's physician advisor rather than to Unum, as instructed in the communication from Unum to Bilyeu. *See id.* Because the letter from Bilyeu's physician did not comply with the appeal procedure and did not seek administrative review, the district court found that Bilyeu failed to exhaust the available administrative remedies. *See id.* The district court specifically ruled that Bilyeu's submission of additional medical information was no substitute for filing an appeal as directed.

The district court correctly identified and applied governing precedent. As noted in *Diaz*, 50 F.3d at 1483, "[e]arly in ERISA's history," we established the general rule requiring exhaustion of administrative remedies. *See also Mack v. Kuckenmeister*, 619 F.3d 1010, 1020 (9th Cir. 2010). We concluded that exhaustion of administrative remedies is warranted because exhaustion is consistent with the legislative structure of ERISA. We also reasoned that the exhaustion requirement advances "important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise. . . ." *Id.*, citing *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir. 1980).

The district court faithfully adhered to this precedent when it precluded Bilyeu's claim due to her failure to submit an appeal to Unum, the benefits administrator. *See Diaz*, 50 F.3d at 1483 ("By not submitting a written appeal to the Benefits Administrator, [the Plaintiff] failed to comply with the Plan's

internal review procedures and hence did not exhaust the available administrative remedies. . . ."); *see also Sarraf v. Standard Insurance Co.*, 102 F.3d 991, 993 (9th Cir. 1996) ("Under *Diaz*, [Plaintiff's] failure to request in writing review of the Administrator's adverse decision precludes the instant claims under the ERISA plan."), citing *Diaz*, 50 F.3d at 1483.

Because the district court followed well-established precedent in requiring exhaustion of the prescribed administrative remedy, the majority understandably refrains from holding that the district court abused its discretion by applying an incorrect legal rule. Rather, the majority excuses Bilyeu's lack of exhaustion by attributing to Unum a purported failure "to establish or follow reasonable claims procedures." *Majority Opinion*, p. 7254. The majority cites to *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073 (9th Cir. 2011) as support for its holding. However, that case bears little resemblance to this case and is not controlling or compelling. In *Barboza*, the ERISA beneficiary did not receive a timely determination of the Plan's decision. *See Barboza*, 651 F.3d at 1078. No similar allegation was made in this case. In *Barboza*, the issue was whether the Plan provisions complied with ERISA regulations. *See id.* at 1077. No similar issue exists in this case. In *Barboza* we deferred to the interpretation of the Secretary of Labor regarding the proper resolution of "conflicting interpretations" of an ERISA regulation. *Id.* at 1079. No interpretation of an ERISA regulation was involved in this case. Rather, the district court in this case was called upon to decide whether Bilyeu perfected her appeal by sending additional information to the Plan's physician rather than challenging the denial of benefits by directing an appeal to Unum at the address provided.

The majority concedes that the provisions of the denial letter sent to Bilyeu were susceptible to the reading argued by Unum as well as the reading urged by Bilyeu. *See Majority Opinion*, p. 7255. That concession guts the majority's analysis, because a decisionmaker's choice between two viable

interpretations of the facts cannot constitute abuse of discretion as a matter of law. *See Hinkson*, 585 F.3d at 1260 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (citation omitted). The district court acted within its discretion when it concluded that Bilyeu failed to exhaust the administrative remedies available under the ERISA plan administered by Unum. No legal or factual basis exists for reversing the district court's ruling. Quite simply, as we stated in *Diaz*, "[b]y not submitting a written appeal *to the Benefits Administrator*, [Bilyeu] failed to comply with the Plan's internal review procedures and hence did not exhaust the available administrative remedies. . . ." *Diaz*, 50 F.3d at 1483 (emphasis added).

I also part company with the majority in its analysis of the district court's ruling on the merits of Unum's counterclaim.

Like the majority opinion, I start my analysis with the United States Supreme Court's decision in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 362-63 (2006). In that case, the Supreme Court addressed the circumstances under which an ERISA fiduciary may sue an ERISA beneficiary for reimbursement when the beneficiary recovers from a third party. *See id*. at 359. The Supreme Court relied on the equitable rule that an obligation to convey specific proceeds imposes a constructive trust on those proceeds. *See id*. at 362-64.

Applying the precepts of *Sereboff* to the facts of this case, I reach the same conclusion as the majority opinion regarding the existence of an equitable trust. The ERISA Plan provided that Bilyeu could receive full long-term disability benefits premised upon her agreement to reimburse Unum for any overpayment due to receipt of benefits from any other sources. Thus, any overpayment due to receipt of benefits from other sources would constitute the particular fund to which a constructive lien in favor of Unum applied.

Although all parties agree that Bilyeu was obligated to reimburse Unum, the majority opinion lets Bilyeu off the hook, accepting her argument that she has already spent the money paid to her by Unum and, therefore, those specific proceeds can never be recovered. In doing so, the majority opinion creates an unwarranted circuit split and completely disregards the concept of fairness, the paramount principle of equity. *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 133 (1995).

In *Cusson v. Liberty Life Insurance Co. of Boston*, 592 F.3d 215, 231-32 (1st Cir. 2010), the First Circuit considered a case also involving overpayment of long-term disability benefits due to the receipt of social security benefits by the claimant.

The claimant argued that the ERISA fiduciary advanced a legal claim rather than an equitable claim, and therefore, the claim was barred. *See id*. at 230. The First Circuit rejected this argument, concluding that it was inconsistent with the Supreme Court's reasoning in *Sereboff*. *See id*. at 231. The First Circuit concluded that the rule of equity imposes a constructive trust on the proceeds as soon as they are acquired by the recipient of those proceeds. *See id*. The First Circuit reasoned that because the contract between the ERISA fiduciary and the ERISA beneficiary put the ERISA beneficiary on notice that reimbursement would be required if the ERISA beneficiary was overpaid, enforcement of the resulting constructive trust constituted equitable relief. *See id*. Because the circumstances in *Cusson* are virtually identical to the facts in this case, there is no principled basis upon which *Cusson* can be distinguished.

Similarly applying *Sereboff*, the Third Circuit in *Funk v. Cigna Grp. Ins*., 648 F.3d 182, 194 (3d Cir. 2011) held that "there is no tracing requirement for an equitable lien by agreement. Property to which the lien attached may be converted

into other property without affecting the efficacy of the lien." (citations and footnote reference omitted).

In *Gilchrest v. Unum Life Insurance Co. of America*, 255 F. App'x 38 (6th Cir. 2007) (unpublished), the Sixth Circuit interpreted *Sereboff* in a similar fashion, ruling that the enforcement of a constructive trust does not require "strict tracing of funds." *Id.* at 45. Rather, the ERISA fiduciary must merely identify a specific fund distinct from the general assets of the ERISA beneficiary for satisfaction of the ERISA fiduciary's equitable claim. This requirement was met by identifying the proceeds of recoveries from any third party. *See id.* This holding was reiterated in *Longaberger Co. v. Kolt*, 586 F.3d 459, 466 (6th Cir. 2009), with the Sixth Circuit declaring in a published opinion that "an equitable lien by agreement does not require tracing or maintenance of a fund in order for equity to allow repayment," and citing *Gilchrest* with approval.

The Seventh Circuit reached the same result in *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614 (7th Cir. 2008). Applying *Sereboff*, the Seventh Circuit recognized a distinction between the "equitable lien by agreement" created by the reimbursement provision in the ERISA plan document and "an equitable lien sought as a matter of restitution." Specifically, for the former, "strict tracing of the funds to be recovered was not required [under *Sereboff*]". *Id.* at 620 (quoting *Sereboff*, 126 S. Ct. at 1875). This distinction is persuasive in view of the express agreement by the beneficiary to reimburse the ERISA plan for any overpayment, without any limitation regarding the funding source of the repayment.

In *Dillard's Inc. v. Liberty Life Assurance Co.*, 456 F.3d 894 (8th Cir. 2006), the Eighth Circuit followed the approach taken by the First, Sixth and Seventh Circuits. The Eighth Circuit determined that the Supreme Court's ruling in *Sereboff* precluded the argument that the ERISA fiduciary's reimbursement claim sought legal damages. *See id.* at 901. The Eighth

Circuit explained that enforcement of an equitable lien by agreement was an equitable remedy rather than a legal one. *See id*.

In an effort to distinguish the rulings of five of our sister circuit courts, the majority relies on an out-of-circuit district court decision, *Epolito v. Prudential Ins. Co. of America*, 737 F. Supp. 2d 1364 (M.D. Fla. 2010). *See Majority Opinion*, p. 7265. The district court in Florida acknowledged the Supreme Court's holding in *Sereboff* that "strict tracing rules do not apply to equitable liens by agreement. . . ." *Id*. at 1380 (*quoting Sereboff*, 547 U.S. at 364). However, the district court stated that it would "not read *Sereboff's* holding with respect to tracing as broadly" as the circuit courts. *Id*. I am not persuaded by the reasoning of the Florida district court. Indeed, it appears that the Eleventh Circuit does not agree with the reasoning in *Epolito*. *See Popowski v. Parrott*, 461 F.3d 1367, 1374 n.8 (11th Cir. 2006) ("[W]e observe that the Supreme Court in *Sereboff* . . . clarified that the strict tracing requirements that apply to equitable liens . . . do not apply to equitable liens by agreement. . . .") (citation and internal quotation marks omitted). The Florida district court acknowledged this language in the Eleventh Circuit's decision, but dismissed it as dicta. *See Epolito*, 737 F. Supp. 2d at 1381 n.8.

The Florida district court also gave extremely short shrift to the Eleventh Circuit decision in *Admin. Comm. for the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton*, 513 F.3d 1223, 1227 & n.4 (11th Cir. 2008) (concluding that the ERISA Plan's action to recover overpayment from a third-party was equitable in nature).

The majority opinion seeks to bolster the district court's ruling in *Epolito* by reference to *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). *See Majority Opinion*, pp. 7265-66. However, the First Circuit convincingly distinguished *Knudson*, noting that in *Knudson*, the funds in question were never actually in the possession of the ERISA

beneficiaries. *See Cusson*, 592 F.3d at 230; *see also Sereboff*, 547 U.S. at 365-66 (distinguishing *Knudson*). The First Circuit persuasively explained that *Sereboff* is the governing precedent when the funds in question are controlled by the ERISA beneficiary. *See id.*

The majority's reliance on general language in *Amschwand v. Spherion Corp.*, 505 F.3d 342, 346 (5th Cir. 2007) regarding the general principles of equity does not in any way dilute the force of the five circuit courts that have interpreted *Sereboff* as not imposing a tracing requirement on funds being sought pursuant to an equitable agreement. This tracing discussion from *Sereboff* was totally ignored by the Fifth Circuit.

The main problem with the majority's reliance on *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), a recent case from the United States Supreme Court, is that the cited language is part of the preliminary discussion from the Court prior to its analysis of the actual issues presented. *See id.* at 1879 ("[T]raditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were *particular* funds or property in the defendant's possession.") (citation omitted) (emphasis in the original). The Court then went on to discuss the imposition of an injunction against the ERISA Plan Administrator, with no mention of the tracing issue. *See id.* at 1879-80.

Another problem with the majority's reliance on *Amara* is that the quoted language is entirely consistent with the analysis in *Sereboff*. *See* 547 U.S. at 364-65 (noting that the common law requirement of tracing property to "some particular funds or assets" applied to an equitable lien by restitution but not to an equitable lien by agreement) (citation omitted).

The final problem with the majority's reliance on *Amara* is that it never mentions, let alone purports to overrule, the analysis in *Sereboff*. Indeed, because *Sereboff* specifically

addresses the issue presented to us, it is the more applicable Supreme Court precedent.

The majority opinion also quotes at length from various treatises. *See Majority Opinion*, pp. 7266-67. However, it is well-established that treatises are a compilation of general principles of law, rather than concrete application of principles of law to a defined set of facts. *See Hart v. Massanari*, 266 F.3d 1155, 1169-70, 1171-73 (9th Cir. 2001) (explaining that persuasive authority, including treatises, cannot overcome the force of Supreme Court precedent).

I am also not persuaded by the majority's citation to *Bonneville Power Admin. v. Wash. Pub. Power Supply Sys.*, 956 F.2d 1497, 1507 (9th Cir. 1992). *See Majority Opinion*, p. 7268-69. That case predates *Sereboff* by almost fifteen years and is inconsistent with the Supreme Court's reasoning. Rather than creating an indefensible circuit split, I would adhere to the reasoning of the Supreme Court in *Sereboff* as interpreted by our sister circuits, and conclude that strict tracing of the overpaid funds is not required to enforce an equitable lien by agreement. If the ERISA fiduciary were seeking reimbursement in the absence of an agreement to reimburse any overpayment, I would agree with the majority opinion that application of the holding in *Knudson* would be appropriate. However, where the ERISA beneficiary expressly agrees to reimburse the Plan for any benefit overpayment, as in this case, enforcement of the resulting equitable lien by agreement constitutes an equitable remedy rather than a legal one, and *Sereboff* controls. *See Sereboff*, 547 U.S. at 368 (recognizing the distinction between an equitable lien premised on restitution principles and an equitable lien premised on an agreement). The district court's decision in this case properly applied *Sereboff* and its judgment should be affirmed in its entirety.