263 F.3d 1099 (9th Cir. 2001)
 MARVIN GUTHART, PLAINTIFF-APPELLANT-CROSS APPELLEE,
v.
THOMAS WHITE, ROBERT PARK, DALTON HOOKS, GARY SILVA, RICHTER, GARY SUTTON, AS TRUTEES OF THE ELECTRICAL WORKERS HEALTHAND WELFARE TRUST OPINION FUND, DEFENDANTS-APPELLEES-CROSS APPELLANTS.
 Nos. 99-16007, 99-16051
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 17, 2000
Filed Sept. 5, 2001
 
 [Copyrighted Material Omitted]
 George W. Foley, Jr., Pearson, Patton, Shea, Foley & Kurtz, Las Vegas, Nevada, for the plaintiff-appellant-cross-appellee.
 Andrews S. Brignone and Adam P. Segal, Schreck Morris, Las Vegas, Nevada, for the defendants-appellees-cross-appellants.
 Appeal from the United States District Court for the District of Nevada Lloyd D. George, District Judge, Presiding. D.C. No. KEN CV-97-00293 LDG/RJJ
 Before: Alex Kozinski, Michael Daly Hawkins, and Marsha S. Berzon, Circuit Judges.
 
 Berzon, Circuit Judge
 
 1
 Marvin Guthart appeals the district court's grant of summary judgment in favor of Appellees/Cross-Appellants, trustees of a union trust fund from which Guthart claims entitlement to health benefits. Guthart also appeals the award of attorneys' fees against him. Respondents cross-appeal the district court's award of only partial attorneys' fees. We affirm as to the merits.[1]
 
 I. Background
 
 2
 Guthart, a journeyman electrician and a member of International Brotherhood of Electrical Workers Local 357, worked for R.G. Electric as a general foreman from 1993 until April 1996. During that time, R.G. Electric made contributions to various union benefit funds on Guthart's behalf. When R.G. Electric went out of business in April 1996, Guthart went to work for Poser Electric, where he continued to work until recently. Guthart worked as an estimator and job supervisor for Poser Electric; he did not perform any work as an electrician.[2]
 
 
 3
 During his employment with Poser Electric, Guthart maintained his union membership, and the company made contributions to the Electrical Workers Health & Welfare Trust Fund ("Trust Fund") on Guthart's behalf. The Trust Fund's purpose is "to provide health and welfare benefits for employees and their dependents." "Employee" is defined in the Trust Agreement as "a person who is employed by an employer and for whom contributions have been made or are required pursuant to a collective bargaining agreement."
 
 
 4
 In April 1996, Guthart's wife required hospitalization for cancer and incurred medical bills of approximately $20,000. The Trust Fund at first refused payment for those medical bills, contending that Guthart was not covered for the relevant time period. The coverage dispute was resolved, however, and the Trust Fund paid the April 1996 medical expenses.
 
 
 5
 Guthart's wife required further treatment, so on August 28, 1996 Guthart sought and received a letter from the Trust Fund confirming that Guthart and his wife were "eligible for coverage" for August and September 1996. In September, Guthart's wife incurred additional medical expenses amounting to approximately $20,000. The Trust Fund again denied coverage, on the ground that Guthart was not performing bargaining unit work and therefore was not eligible for coverage under the Trust agreement.
 
 
 6
 Guthart sued for the contested health benefits, and after discovery, moved for summary judgment. Respondents crossmoved for summary judgment. The district court granted summary judgment for respondents and awarded partial attorneys' fees to the Trust Fund. Guthart appealed, and respondents cross-appealed the amount of their fee award.
 
 II. Discussion
 A. The Legal Framework
 
 7
 The Labor Management Relations Act ("LMRA" or "the Act") generally prohibits payments by employers of "any money or other thing of value . . . to any representative of any of his employees who are employed in an industry affecting commerce." LMRA §§ 302(a) (codified at 29 U.S.C. §§ 186(a)). Violating this provision is a crime. See id. The Act provides certain exceptions to the general prohibition imposed by §§ 186(a), one of which permits contributions to:
 
 
 8
 a trust fund established by such representative for the sole and exclusive benefit of the employees of such employer, and their families and dependents . . . : Provided, that (A) such payments are held in trust for the purpose of paying . . . for medical or hospital care . . . ; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer.
 
 
 9
 29 U.S.C. §§ 186(c)(5).
 
 
 10
 Contributions from an employer to a benefit trust fall within the §§ 186(c)(5) exception only if made pursuant to a written agreement:
 
 
 11
 [A]ny payment made by an employer to an employee representative, and this includes trustees administering a pension trust fund . . . and the receipt of such payments by an employee representative are absolutely forbidden unless there is a written agreement between the employer and the union specifying the basis upon which the payments are made. . . . The reason for the rigid structure of Section 302 is to insure that employer contributions are only for a proper purpose and to insure that the benefits from the established fund reach only the proper parties.
 
 
 12
 Thurber v. Western Conf. of Teamsters Pension Plan, 542 F.2d 1106, 1108 (9th Cir. 1976) (quoting Moglia v. Geoghegan, 403 F.2d 110, 116 (2d Cir. 1968)).
 
 
 13
 Because "payments made other than in conformity with the provisions of a written agreement are unlawful, " Producers Dairy Delivery Co. v. Western Conf. of Teamsters Pension Trust Fund, 654 F.2d 625, 627 (9th Cir. 1981), the fact that contributions have been made does not alone establish the eligibility of the employees on whose behalf they are made. Aitken v. IP & GCU-Employer Retirement Fund, 604 F.2d 1261, 1266 (9th Cir. 1979); Thurber, 542 F.2d at 1109; see also Moglia, 403 F.2d at 116. Rather, if the contributions were made illegally, the employee on whose behalf they were made cannot legally receive benefits from the Fund.[3]
 
 
 14
 Guthart suggests, however, that so long as an employer is party to a written agreement authorizing contributions, all contributions made by that employer, whether or not contemplated by the written agreement, are both legal and sufficient to establish the eligibility for benefits of the employee on whose behalf they are made. We rejected this very argument in Thurber.
 
 
 15
 The plaintiff in Thurber was a member of the Teamsters' Union, and worked full-time for the same employer from 1952 to 1974, except for a three-year hiatus from 1959 to 1962. During the hiatus, Thurber worked part-time for the same employer, and allowed his union membership to lapse. During Thurber's nineteen years of full-time employment, his employer made contributions on his behalf to the Teamsters' Pension Plan. The lapse in employment became important, however, because Thurber wished to retire early, and the Plan's early retirement provision required fifteen years of "unbroken service." The Plan administrator told Thurber that he could "heal" his break in service by demonstrating that he had worked at least 600 hours during the lapse, and by causing his employer to make supplemental contributions to cover those hours.
 
 
 16
 Thurber complied with these suggestions, and the Plan accepted his employer's supplemental contribution. Several months after Thurber retired, however, the Plan administrator informed him that he was not, in fact, eligible for early retirement under the Plan. Although there was a written agreement between the Plan and the employer, it did not "contain any provision authorizing the employer to make contributions for the purpose of `curing' or `healing' breaks in service." Thurber, 542 F.2d at 1109. We held, accordingly, that "it was illegal for the Pension Fund to receive the retroactive contribution in an attempt to heal the break in service," and that "[i]t would likewise be illegal for the Fund to pay benefits to Thurber based upon the illegal retroactive contribution." Id.
 
 
 17
 Similarly, unless there is a written agreement providing "the detailed basis on which . . . payments [were] to be made" by Poser Electric on Guthart's behalf, it would be illegal for the fund to pay benefits to Guthart, even though contributions were made on his behalf, and even though contributions were legally made for other employees. We therefore turn to the question whether there is such a written agreement.
 
 B. The Trust Agreement
 
 18
 Guthart has not argued that he is a member of the bargaining unit covered by the collective bargaining agreement ("CBA"), or that the contributions on his behalf were required pursuant to the CBA.[4] Rather, Guthart contends that the Trust Agreement alone renders him eligible for benefits.
 
 
 19
 Guthart is correct in asserting that the Trust Agreement itself can satisfy the "written agreement" requirement of §§186(c)(5), if the employer is bound by the Trust Agreement. Under the plain words of the statute, any written agreement with the employer can establish an employee's eligibility for Trust benefits, so long as it actually specifies, directly or by incorporation, "the detailed basis" on which contributions are to be made. See 29 U.S.C. §§ 186(c)(5)(B); Alaska Trowel Trades Pension Fund v. Lopshire, 103 F.3d 881, 883 (9th Cir. 1996) (holding that a pre-hire agreement authorized by §§ 8(f) of the National Labor Relations Act satisfies the writing requirement of §§ 186(c)(5)(B) so long as it"constitutes a sufficient safeguard against illegal payments"); see also Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc., 883 F.2d 454, 460 (6th Cir. 1989) ("Although these writings are not collective bargaining agreements, they sufficiently comport with the writing requirements of [§§ 186(c)(5)]"); Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 376 (7th Cir. 1985) (holding that"Assent to Participate" satisfied written agreement requirement); Hinson v. NLRB, 428 F.2d 133, 139 (8th Cir. 1970) (holding that "written agreement with the employer" need not be a collective bargaining agreement). There is no reason the Trust Agreement itself could not be the "written agreement" required by §§ 186(c)(5) if it otherwise satisfied the requirements set by that section.
 
 
 20
 But Guthart has not pointed to any sensible interpretation of the Trust Agreement that renders him eligible for benefits. Guthart's central contention in this regard is that the definition, in section 2.3 of the Trust Agreement, of"employee" as "a person who is employed by an employer and for whom contributions to the trust fund have been made or are required pursuant to a collective bargaining agreement" means that any person on whose behalf contributions "have been made," whether pursuant to the CBA or not, is an employee, and as such, eligible for benefits. This argument fails, for two reasons.
 
 
 21
 First, the reading of section 2.3 proposed by Guthart is not the most natural way to understand the "employee" definition, nor can it be squared with the Trust Agreement as a whole. As we read that definition, it requires that contributions be "pursuant to a collective bargaining agreement" whether contributions have already been made or are required but have not yet been made. The "or are required " clause, on this reading of the Trust Agreement's language, imparts only that individuals whose employers have not made required contributions -that is, individuals employed by delinquent employers -are not excluded from coverage under the Agreement. This understanding of section 2.3 is confirmed -indeed, compelled -by section 4.1 of the Trust Agreement, which requires that any contribution to the trust fund be made "pursuant to the collective bargaining agreement, " thereby precluding the acceptance of any other contributions.
 
 
 22
 Second, if section 2.3 were interpreted as Guthart suggests, it would be an illegal provision sanctioning criminal conduct. Section 186(c)(5), as we have explained, forbids contributions to a jointly-trusteed union-management Trust Fund except pursuant to a detailed written agreement with the employer. The "employee" definition does not itself provide any "detailed basis on which such payments are to be made," nor is there any other part of the Trust Agreement that meets this requirement. Rather, the Trust Agreement simply refers to any CBA for that purpose. Thus, if the Trust Fund accepted and retained contributions based on the"employee" definition alone, the trustees would violate §§ 186(c). See Thurber, 542 F.2d at 1109. We do not construe an ambiguous agreement so as to make it illegal, so long as a legal construction is plausible. United States ex rel Sharma v. University of Southern California, 217 F.3d 1141, 1145 (9th Cir. 2000); United States v. Sacramento Mun. Util. Dist., 652 F.2d 1341, 1346 (9th Cir. 1981).
 
 
 23
 That the Trust Agreement standing alone does not satisfy the requirements of §§ 186(c)(5) is not necessarily the end of the story. As we have already observed, an agreement need not be either a CBA or a Trust Agreement to satisfy §§ 186(c)(5); any "written agreement" complying with §§ 186(c)(5)'s requirements will suffice. Here, the Trust Agreement specifically permits contributions pursuant to the collective bargaining agreement or "any other written agreement which provides for employer contributions to the trust fund." Thus, any written agreement otherwise complying with the statute could validly provide for Trust Fund contributions on behalf of an employee.
 
 
 24
 It is also true, as Guthart maintains, that the statute does not bar contributions on behalf of supervisory or managerial employees. Although the term "employee" is defined for some purposes under the LMRA so as to exclude such employees,[5] that limited definition is explicitly confined to "this subchapter," 29 U.S.C. §§152, and "this subchapter" is denominated "Subchapter II National Labor Relations Act." Section 302(c)(5) appears in a separate subchapter of the LMRA, "Subchapter IV-Liabilities of and Restrictions on Labor and Management." Because there is no limited definition of "employee" contained in Subchapter IV, we are directed by Supreme Court precedent to apply the common law definition of the term "employee," see Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23 (1992), a definition that does not distinguish between supervisory and managerial employees and others who work for hire. See id. at 323-24 (listing nonexhaustive criteria for identifying master-servant relationship); see also Restatement (Second) of Agency §§ 220(2) & cmt. (1958) (same).[6]
 
 
 25
 The problem, however, is that Guthart has not identified any separate agreement to which the employer is a party and which provides for payments on his behalf, or on behalf of non-collective bargaining unit supervisory or managerial employees generally, into the Trust Fund.[7] Because neither the Trust Agreement nor any other agreement provides the detailed written agreement necessary for the Fund to legally accept Poser Electric's contributions with respect to Guthart's wages, Guthart cannot establish his eligibility for benefits. See Thurber, 542 F.2d at 1109; Aitken, 604 F.2d at 1266. Accordingly, we affirm the district court's grant of summary judgment in favor of the Trust Fund.
 
 AFFIRMED
 
 
 Notes:
 
 
 [1]
 In an unpublished disposition filed simultaneously with this decision, we vacate the fee award and dismiss appellees' cross appeal. See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1156 (9th Cir. 2001).
 
 
 [2]
 Although Guthart's opening brief asserts, without citation to the record, that he "occasionally" performed electrical work, the district court found that Guthart did not perform electrical work as described in the collective bargaining agreement. We agree that there is no evidence in the record sufficient to raise a triable issue as to whether Guthart did perform electrical work.
 
 
 [3]
 We note that the LMRA does not bar pursuit of any other remedies an employee may have against the trustees or his employer, such as for reimbursement of contributions made on his behalf. Thurber, 542 F.2d at 1109 n.4. Guthart here seeks only the payment of benefits from the Fund. We therefore do not address the availability of any other remedy under state or federal law, including the availability of remedies under, or in light of, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001-1461. See, e.g., Greany v. Western Farm Bureau Life Insurance Co., 973 F.2d 812, 821-22 (9th Cir. 1992).
 
 
 [4]
 The CBA requires contributions to the health insurance Trust Fund based on wages paid to bargaining unit members. Signatory employers, including Poser Electric, are required to contribute to the Trust Fund $3.76 per hour worked by each member of the bargaining unit.
 
 
 [5]
 See 29 U.S.C. §§152(3) ("The term `employee' shall include any employee . . . but shall not include . . . any individual employed as a supervisor.").
 
 
 [6]
 Whether contractors may make contributions for non-employees such as owners or sole proprietors is a separate question which we need not address here. See Aitken v. IP & GCU-Employer Retirement Fund, 604 F.2d 1262, 1268 (9th Cir. 1979).
 
 
 [7]
 The record reflects that some other electrical contractors have made contributions to the Trust Fund on behalf of non-bargaining unit employees pursuant to non-bargaining unit participation agreements. Indeed, Guthart himself was covered by such an agreement while employed by R.G. Electric.