**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| OREGON TEAMSTER EMPLOYERS TRUST, *Plaintiff-Appellant*, v. HILLSBORO GARBAGE DISPOSAL, INC.; ROBERT E. HENDERSON; ESTATE OF DARROLL JACKSON, *Defendants-Appellees*. | No. 13-35555 D.C. No. 3:11-cv-01487-ST OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted
May 8, 2015–Portland, Oregon

Filed September 8, 2015

Before: William A. Fletcher and Andrew D. Hurwitz, Circuit Judges, and Michael M. Baylson,[*] Senior District Judge.

Opinion by Judge Baylson;
Concurrence by Judge W. Fletcher

## SUMMARY[**]

### Employee Retirement Income Security Act

The panel affirmed the district court's summary judgment in favor of Hillsboro Garbage Disposal in an action brought against a subscribing employer by a health and benefit plan that was governed by the Employee Retirement Income Security Act.

The plan provided health and welfare benefits to workers pursuant to a collective bargaining agreement between a union and the employer, Hillsboro Garbage Disposal. Non-bargaining unit workers were eligible to participate in the plan if they were bona fide employees of Hillsboro Garbage. Hillsboro Garbage, however, made

---

[*] The Honorable Michael M. Baylson, Senior District Judge for the U.S. District Court for the Eastern District of Pennsylvania, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

unauthorized plan contributions on behalf of two workers who were employed by a separate company.

The panel held that the ERISA plan's common law claims for breach of contract were preempted by ERISA because the claims "related to" the plan. Distinguishing *Providence Health Plan v. McDowell*, 385 F.3d 1168 (9th Cir. 2004), which allowed a contract claim to enforce a reimbursement provision on the basis that plan interpretation was not required, the panel stated that this case turned on whether the two workers were eligible plan participants, and thus required analysis of the ERISA plan terms. The panel rejected the argument that it must interpret ERISA to be consistent with the Labor Management Relations Act and ensure that the plan was not in violation of the LMRA due to the unauthorized contributions and benefits payments.

The panel affirmed the district court's grant of summary judgment on the plan's claims for specific performance and restitution under ERISA § 502(a)(3). The panel held that these claims were not authorized equitable claims under ERISA because specific performance is typically a legal remedy, and the reimbursement provision of the plan did not amount to an equitable lien by agreement.

Concurring, Judge W. Fletcher wrote that this case should be taken en banc to reverse *McDowell* because *McDowell* is contrary to ERISA's enforcement scheme and broad preemption clause in allowing a contract claim to enforce the terms of an ERISA plan.

**COUNSEL**

Michael J. Morris (argued) and Linda J. Larkin, Bennett, Hartman, Morris & Kaplan, LLP, Portland, Oregon, for Plaintiff-Appellant.

Iris K. Tilley (argued) and Edwin A. Harnden, Barran Liebman LLP, Portland, Oregon, for Defendants-Appellants.

**OPINION**

BAYLSON, District Judge:

Oregon Teamster Employers Trust ("OTET") appeals the grant of summary judgment in favor of Defendants Hillsboro Garbage Disposal, Inc. ("Hillsboro Garbage"), Robert Henderson ("Henderson"), and the Estate of Darrol Jackson ("Jackson"). The district court, adopting the findings of a magistrate judge, granted summary judgment in favor of Defendants on (1) OTET's breach of contract claims because the court found those claims to be preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"); and (2) OTET's restitution and specific performance claims because the court concluded that those claims were not cognizable under ERISA as they sought legal—not equitable—relief.

The issues presented are:

1. Whether OTET, an Employer Health and Benefit Plan, governed by ERISA, can recover damages, on a breach of contract claim, against a business which received

health care benefits for two ineligible employees.

2. Whether OTET's claims for restitution and specific performance are permitted.

3. Whether the district court abused its discretion in refusing to allow OTET to amend its complaint to allege fraud.

We affirm the district court's judgment.

## I.      Facts & Procedural History

OTET is an Employer Health and Benefit Plan governed by ERISA.  OTET provides health and welfare benefits to the employees whose employers have entered into collective bargaining agreements with Joint Council No. 37 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, and local union affiliates.

In September 2003, Hillsboro Garbage and Teamsters Local Union No. 305 ("Union") entered into a collective bargaining agreement ("CBA") which made Hillsboro Garbage a subscriber to OTET, effective March 1, 2003, through February 28, 2007.[1]  The CBA was renewed in April 2007 through February 28, 2012.

---

[1] OTET is a self-funded plan which provides health and welfare benefits to bargaining unit (and, in some cases, non-bargaining unit) employees.  OTET contracts with Regence Blue Cross ("Blue Cross") to process and pay claims.

Under the terms of the Subscription Agreements, Hillsboro Garbage and the Union agreed to be bound by the provisions of the Trust Agreement governing OTET, chose the Health & Welfare Plan F/W ("Plan") for eligible employees and their dependents, and agreed that Hillsboro Garbage would be subject to periodic audits to detect unauthorized contributions.

The Trust Agreement also authorized OTET's Trustees to enter into special agreements with Hillsboro Garbage under which OTET would provide health and welfare benefits for the company's non-bargaining unit employees (the "NBU Agreements"). The NBU Agreements specify that only individuals with a *bona fide* employment relationship with Hillsboro Garbage are eligible to participate in OTET benefit plans.

Starting in 2003, OTET received contributions for health care benefits coverage for Henderson and Jackson, purportedly as employees of Hillsboro Garbage. In fact, Henderson and Jackson were not employed by Hillsboro Garbage, but by a separate company, RonJons Unlimited, Inc. ("RonJons"), which had common ownership with Hillsboro Garbage.

In 2006, an audit revealed that Hillsboro Garbage had made unauthorized contributions on behalf of Henderson and Jackson. OTET sent Hillsboro Garbage a letter on August 21, 2006, enclosing a copy of the 2006 audit, stating that the audit uncovered $70,000 in unauthorized contributions, and advising Hillsboro Garbage that it had six months to make a written refund request.

Following the 2006 audit, OTET continued to accept contributions from Hillsboro on behalf of Henderson and Jackson and to pay medical claims for their benefit. In 2011, after another audit, OTET removed the two men

from the plan and filed this lawsuit seeking recovery of benefits paid in excess of the contributions received from Hillsboro Garbage on their behalf. Count I of OTET's second amended complaint seeks restitution from all Defendants, Count II seeks specific performance against Hillsboro Garbage to repay the benefits wrongly paid, and Counts III and IV assert common law breach of contract claims against Hillsboro Garbage.

After discovery, OTET moved for partial summary judgment. The magistrate judge recommended that OTET's motion be denied and that the district court instead grant summary judgment in favor of Defendants. The magistrate judge concluded that Counts III and IV of OTET's second amended complaint, the common law breach of contract claims, were preempted by ERISA. The magistrate also concluded that the claims for legal restitution and specific performance were not cognizable under ERISA. After supplemental briefing and argument, the district judge approved the magistrate judge's recommendation, granting summary judgment to Defendants and dismissing the case with prejudice.

## II. The District Court Properly Dismissed Counts III and IV (Common Law Breach of Contract) as Preempted by ERISA

### A. ERISA Preemption

The district court found OTET's state law claims preempted by ERISA because they are "premised on the existence of an ERISA plan, and the existence of the plan is essential to the claim[s'] survival" and they have a "genuine impact . . . on a relationship governed by ERISA"—that between the plan and the employer. *See Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004). We review de novo the question of

whether ERISA preempts state law. *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2008).

Under 29 U.S.C. § 1144(a), ERISA's provisions "supersede any and all State laws insofar as they . . . relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." A common law claim "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *McDowell*, 385 F.3d at 1172 (internal quotation marks omitted); *see N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). In determining whether a common law claim has "reference to" an ERISA plan, "the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival." *McDowell*, 385 F.3d at 1172. In evaluating whether a claim has a "connection with" an ERISA plan, we use a "relationship test" that focuses whether the "claim bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, between employer and employee." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009).

OTET's primary argument is that the district court's preemption ruling is contrary to this court's *McDowell* opinion. *McDowell* was a breach of contract action by a health insurer against two plan participants who were injured in an automobile accident, seeking reimbursement of benefits paid on the participants' behalf out of a settlement in a tort action. 385 F.3d at 1170–71. The insurer alleged the participants breached both the reimbursement provision of the ERISA plan and separate agreements in which the participants directed their attorney to reimburse the insurer out of any third-party recovery. *Id.* at 1172. The district court concluded that ERISA

preempted the action and dismissed. *Id.* at 1171. We reversed, holding that the insurer's "action for breach of contract does not have the requisite 'connection with' or 'reference to' an ERISA plan" because the parties "are not disputing the correctness of the benefits paid," but rather the insurer "is simply attempting, through contract law, to enforce the reimbursement provision[s]" in the plan and subsequent separate agreements. *Id.* at 1172. "Adjudication of its claim does not require interpreting the plan or dictate any sort of distribution of benefits." *Id.*

The district court distinguished *McDowell*, finding that the key question in this case was the eligibility of Henderson and Jackson to participate in the OTET plan. OTET contends *McDowell* is controlling because adjudication of its breach of contract claims does not require an interpretation of the plan or any distribution of benefits. There is no need to interpret the plan, OTET argues, because there is no dispute that Henderson and Jackson were not employees of Hillsboro Garbage and or that RonJons never entered into a CBA with a labor organization specified in the plan's Trust Agreement.

The district court properly rejected this argument. *McDowell* did not turn on whether the beneficiaries were eligible plan participants. *Cf. Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005) (distinguishing *McDowell* in a case involving whether an ERISA plan administrator breached its fiduciary duty by failing to timely provide notification of plan cancellation because "interpretation of ERISA law lies at the heart of the dispute"). Here, however, although analysis of the employment status of the two individuals and whether RonJons had entered the CBA is admittedly straightforward, analysis of the terms of the ERISA plan is nonetheless required. Moreover, OTET alleged in its

second amended complaint that Hillsboro Garbage breached the terms of the ERISA plan—not separate agreements. *See Bui v. Am. Tel. & Tel. Co. Inc.*, 310 F.3d 1143, 1152 (9th Cir. 2002) (holding ERISA preempted plaintiff's breach of contract claims "because the contract allegedly breached is the ERISA plan itself").

## B.      Potential Liability Under the Labor Management Relations Act

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186, bars employers from contributing to a trust fund on behalf of individuals who are not employees of the contributing employer. 29 U.S.C. § 186(c)(5); *see also Davidian v. S. Cal. Meat Cutters Union & Food Emps. Benefit Fund*, 859 F.2d 134, 135 (9th Cir. 1988). The LMRA also prohibits contributions by employers into employee trust funds made other than in conformity with the provisions of written agreements detailing the basis on which those payments are to be made. *See Producers Dairy Delivery Co., Inc. v. W. Conference of Teamsters Pension Trust Fund*, 654 F.2d 625, 627 (9th Cir. 1981). OTET argues that we must interpret ERISA to be consistent with the LMRA and ensure that OTET is not in violation of the LMRA. *See Guthart v. White*, 263 F.3d 1099, 1103 (9th Cir. 2001) (noting that unless employee could point to a written agreement providing the basis on which his employer was to make payments to an ERISA fund, "it would be illegal for the fund to pay benefits" to him under the LMRA).[2]

---

[2] OTET expressly disclaims any argument that the LMRA preempts ERISA, and we would reject such an argument had it been advanced.

OTET's assertion that the district court's finding of preemption would subject it to LMRA liability is entirely speculative.  "The dominant purpose of [§] 302 is to prevent employers from tampering with the loyalty of union officials and to prevent union officials from extorting tribute from employers." *Turner v. Local Union No. 302*, 604 F.2d 1219, 1227 (9th Cir. 1979).  Congress intended § 302 to target practices harmful to the collective bargaining process, including "bribery by employers during collective bargaining, extortion by employee representatives, and abuse of power by union officers who have sole control over welfare funds." *Toyota Landscaping Co., Inc. v. S. Cal. Dist. Council of Laborers*, 11 F.3d 114, 117–18 (9th Cir. 1993); *see also Maxwell v. Lucky Constr. Co., Inc.*, 710 F.2d 1395, 1398 (9th Cir. 1983) ("The congressional objective in enacting § 302 was to inhibit corrupt practices in the administration of employee welfare funds established through the collective bargaining process.").  These objectives are plainly not implicated in this case.[3]

Moreover, to the extent that there is an LMRA violation, OTET bears at least some responsibility.  OTET learned in 2006 that Hillsboro Garbage had allowed

*See Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999) ("The preemption doctrine per se does not govern questions relating to the compatibility of two or more federal laws.").

[3] Although we indicated in *Guthart* that an ERISA trust's payments to an employee would be unlawful under the LMRA absent a written agreement, that case did not address "the availability of remedies under, or in light of" ERISA.  263 F.3d at 1102 n.3.

Henderson and Jackson to enroll and had made contributions on their behalf, but OTET took no action to address the issue until after a second audit in 2010.[4]

### III.    The District Court Properly Dismissed Counts I and II

#### A.    Restitution and Specific Performance Under ERISA § 502(a)(3)

Section 502(a)(3) of ERISA authorizes civil suits "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan."  29 U.S.C. § 1132(a)(3).

*Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), considered the scope of relief available under § 502(a)(3).   After a car accident left Knudson quadriplegic, Great-West paid the majority of her medical expenses under an ERISA plan that contained a reimbursement provision giving the plan "'a first lien upon any recovery, whether by settlement, judgment or otherwise,' that the beneficiary receives from the third party" and made the beneficiary "personally liable to [the Plan] . . . up to the amount of the first lien" for failure to

---

[4] To the extent that OTET complains that a finding of preemption would leave it without a remedy, the Supreme Court has made clear that ERISA preemption is appropriate even where ERISA would not provide a remedy for a state law complaint. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190–91 (9th Cir. 2010).

reimburse expenses. *Id.* at 207 (alterations in original). Knudson later received $650,000 in a settlement. *Id.* The settlement allocated the majority of the funds to attorneys' fees and a special needs trust, but only the "portion of the settlement attributable to past medical expenses"— $13,828.70—to reimburse the plan. *Id.* at 207–08. Great-West sued to recover the full value of the benefits it paid. *Id.* at 208–09.

The Supreme Court rejected this claim. The Court explained that only "those categories of relief that were *typically* available in equity" are permitted under § 502(a)(3), but Great-West sought, "in essence, to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity" but only in an action at law. *Id.* at 210 (internal quotation marks omitted). The Court likewise rejected Great-West's characterization of its claim as an equitable claim for restitution. *See id.* at 218. Because the settlement funds Great-West sought were not in Knudson's possession, but instead had been distributed to a trust and to her attorney, the Court found "[t]he basis for petitioners' claim" to be, at bottom, "that petitioners are contractually entitled to *some* funds for benefits that they conferred"; what they really sought was "imposition of personal liability for the benefits that they conferred upon respondents." *Id.* at 214.

In *Sereboff v. Mid Atlantic Medical Services, Inc.*, the Court "consider[ed] again the circumstances in which a fiduciary under [ERISA] may sue a beneficiary for reimbursement of medical expenses paid by the ERISA plan, when the beneficiary has recovered for its injuries from a third party." 547 U.S. 356, 359 (2006). The Sereboffs had received a settlement stemming from a car accident. *Id.* at 360. They failed to reimburse Mid

Atlantic, their health insurer, for medical expenses it had paid, but, pursuant to stipulation, put that amount in an investment account while the parties litigated their dispute.

The Supreme Court held, in contrast to *Knudson*, that the relief "Mid Atlantic sought" was equitable because it was directed at "specifically identifiable funds . . . within the possession and control of the Sereboffs—that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and preserved [in the Sereboffs'] investment accounts." *Id.* at 362–63 (second alteration in original) (internal quotation marks omitted).

The Court characterized Mid Atlantic's claim as indistinguishable from an "equitable lien by agreement," which arises where two parties "contract to convey a specific object even before it is acquired," making the defendant a trustee over the property after he or she obtains it from a third party. *Id.* at 363–64 (internal quotation marks omitted). The Court thus found Mid Atlantic's claim against the Sereboffs viable because it was based on a plan provision that "specifically identified a particular fund, distinct from the Sereboffs' general assets," as well as "a particular share of that fund to which Mid Atlantic was entitled."[5] *Id.* at 364.

---

[5] *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013), the most recent case in which the Supreme Court interpreted § 502(a)(3), is not relevant here because Defendants have not asserted any equitable defenses.

**B.      Recent Ninth Circuit Precedent on Restitution and Specific Performance Under ERISA § 502(a)(3) Does Not Support OTET's Argument**

In *Bilyeu v. Morgan Stanley Long Term Disability Plan*, we vacated a district court judgment reimbursing a plan administrator's overpayments of long-term disability benefits to a beneficiary because it did not constitute equitable relief under § 502(a)(3).  683 F.3d 1083, 1086 (9th Cir. 2012).  The plan required Bilyeu to "reimburse Unum [the plan administrator] for any overpayment arising from her receipt of disability payments from any other source." *Id.* at 1087.  After Bilyeu contested termination of her long-term disability benefits, Unum filed a counterclaim seeking reimbursement of allegedly overpaid benefits. *Id.* at 1087–88.

The district court awarded reimbursement, *id.* at 1088, but we reversed, holding that the district court had improperly awarded legal relief unavailable under ERISA, *id.* at 1096.  We explained that *Sereboff* "establish[ed] at least three criteria for securing an equitable lien by agreement in an ERISA action":

> *First*, there must be a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party.  *Second*, the reimbursement agreement must specifically identify a particular fund, distinct from the beneficiary's general assets, from which the fiduciary will be reimbursed.  *Third*, the funds specifically identified by the fiduciary must be within the possession and control of the beneficiary.

*Id.* at 1092–93 (alterations, citations, and internal quotation marks omitted).

Unum's claim met the first element because Bilyeu had promised to reimburse the plan for any overpayment resulting from Social Security benefits she received. *Id.* at 1093. But we found Unum's argument that the claim met the second element "problematic" because the "overpaid disability benefits are not a particular *fund*, but a specific amount of money encompassed *within* a particular fund— the long-term disability benefits Unum paid to Bilyeu." *Id.* And, even if the overpaid benefits qualified as a "particular fund," Unum had not established the funds were within Bilyeu's "possession or control" because "Bilyeu ha[d] spent the overpaid benefits." *Id.* at 1094. Moreover, we held that an equitable lien cannot "be enforced against general assets when the specifically identified property has been dissipated." *Id.* at 1095. "Nothing in *Sereboff* suggests that a fiduciary can enforce an equitable lien against a beneficiary's *general assets* when specifically identified funds are no longer in a beneficiary's possession." *Id.*

In *McDowell*, we evaluated a claim for reimbursement of medical expenses pursuant to an ERISA plan's reimbursement provision after the beneficiary received a settlement relating to injuries from an automobile accident. 385 F.3d at 1170–71. Although the plan argued that relief was authorized under § 502(a)(3) because it had "term[ed its claim] an action in equity for specific performance," we affirmed the district court's dismissal of the plan's claim for failure to state a claim. *Id.* at 1174. The plan was "simply attempting to enforce a contractual obligation for repayment," and "such monetary reimbursement constitutes legal rather than equitable relief," and not an allowable "constructive trust or equitable lien on particular property."

*Id.* (internal quotation marks omitted); *see also Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234, 1236–38 (9th Cir. 2003) (holding that a union could not sue a defendant who obtained a scholarship loan under § 502(a)(3) for unjust enrichment after the defendant went to work for a non-union employer and failed to pay back the loan, contrary to the scholarship agreement).

## C.     Analysis

### 1.  Specific Performance

In support of its specific performance claim, OTET relies on the statement in *Sereboff* that "ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable."  547 U.S. at 363. OTET also points out that the Supreme Court has, outside the ERISA context, explained that specific performance of reimbursement obligations "attempt[s] to give the plaintiff the very thing to which he was entitled," and is therefore equitable relief.  *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (internal quotation marks omitted).

But OTET's claim for "specific performance of the reimbursement provisions of the plan" is squarely foreclosed by *Knudson* and *McDowell*.  *Knudson* held that specific performance is typically a legal remedy unless it is "sought to prevent future losses that either were incalculable or would be greater than the sum awarded." 534 U.S. at 211.  The exception *Sereboff* carved out to this rule was for restitution sought from a particular fund (or "*res*"), not specific performance.  *Sereboff*, 547 U.S. at 362–63.

## 2.  Restitution

OTET also characterizes the reimbursement provision of the plan as an equitable lien by agreement, allowing for recovery under *Sereboff*.  *See id.* at 363–65.  But OTET does not seek recovery from an identifiable *res*, as *Sereboff* requires.  *See id.* at 363 (requiring that equitable restitution be sought from a "particular fund").  As in *Honolulu Joint Apprenticeship & Training Committee of United Ass'n Local Union No. 675 v. Foster*, OTET wishes to recover from the general assets of Defendants' funds that were never "actually transferred" to them—in this case funds paid directly to medical providers.   332 F.3d at 1238.  Moreover, the plan's reimbursement provision "specifically provides for the remedies sought," which "reinforces the conclusion that this is essentially an action at law to remedy . . . breach of a legal obligation."  *Id.*

OTET likewise cannot meet the "three criteria for securing an equitable lien by agreement in an ERISA action" that we have interpreted *Sereboff* to require.  *See Bilyeu*, 683 F.3d at 1092–93.  Although the plan contained "a promise by the beneficiary to reimburse" OTET, it did not "specifically identify a particular fund, distinct from the beneficiary's general assets, from which the fiduciary will be reimbursed"—that is, there is no *res* from which OTET seeks recovery.  *See id.* (alterations and internal quotation marks omitted).   Moreover, even if the agreement specifically identified funds from which OTET could recover, the amounts it paid for the individual defendants'

medical expenses are not in their "possession and control."**6** *See id.* (internal quotation marks omitted).

## IV.    The District Court Did Not Abuse Its Discretion in Denying OTET the Right to File a Third Amended Complaint

OTET contends in its appeal that the district court abused its discretion in denying OTET leave to amend its complaint to allege fraud.  We review the district court's denial of leave to amend for abuse of discretion. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015).

OTET included a fraud count in its first amended complaint but voluntarily abandoned that claim when it filed the second amended complaint because it "believed" its "breach of contract claims were not preempted," and thus the fraud claim "was superfluous."  Because OTET was given two opportunities to amend its complaint and unilaterally decided to eliminate the fraud count, it cannot

---

**6** OTET's argument that it is entitled to restitution of "ill-gotten gains" is similarly unavailing.  Even if it were possible to obtain restitution of "ill-gotten gains" without identifying a specific *res*, which we doubt, it has not shown the funds were obtained through "fraud or wrongdoing." *Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1007 (9th Cir. 1999) (same).  OTET voluntarily abandoned its fraud claim and concedes it knew Henderson and Jackson were not employees of Hillsboro Garbage for the entire time the benefits it paid on their behalf exceeded contributions made on their behalf.  Moreover, a beneficiary's contractual obligation to reimburse an ERISA trust "does not make money previously paid by [the trust] 'ill-gotten gains' subject to restitution within the meaning of § 1132(a)(3)." *Id.*

establish abuse of discretion in denying the motion to amend, as it does not contend that it acquired any new knowledge or that there was any misconduct by Defendants that caused it to omit the fraud claim from the second amended complaint. *See Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1017 (9th Cir. 1999) (finding district court did not abuse its discretion denying leave to amend when the plaintiff had twice been given the opportunity to amend and the additional proposed amendment "did nothing more than reassert an old theory of liability based on previously-known facts").

## V.      Conclusion

The judgment of the district court is **AFFIRMED**.

---

W. FLETCHER, Circuit Judge, concurring:

Oregon Teamster Employers Trust ("OTET")'s primary argument on appeal is that the district court erred in concluding that its claim for breach of contract was preempted by ERISA. In particular, OTET argues that, like the trust in *Providence Health Plan v. McDowell*, 385 F.3d 1168 (9th Cir. 2004), it is merely "attempting, through contract law," to enforce a contractual provision that is incorporated into the ERISA plan. *Id*. at 1172. The panel opinion distinguishes *McDowell* on the ground that here, unlike in *McDowell*, "analysis of the terms of the ERISA plan is . . . required." Op. at 9. I agree that *McDowell* can be distinguished from this case, but the distinction is narrow and unconvincing. I think the better course would be to take this case en banc to reverse *McDowell*. *McDowell* was wrong when it was decided and is wrong today.

As the panel opinion observes, ERISA has a broad preemption clause, "one of the broadest preemption clauses ever enacted by Congress." *Security Life Ins. Co. of America v. Meyling*, 146 F.3d 1184, 1188 (9th Cir. 1998) (quoting *Evans v. Safeco Life Ins. Co*., 916 F.2d 1437, 1439 (9th Cir. 1990)). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The clause is broad because ERISA contains within itself a "carefully crafted and detailed enforcement scheme" that specifies in exacting detail just how an ERISA plan may be enforced. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Assocs*., 508 U.S. 248, 254 (1993)); *see* 29 U.S.C. § 1132(a). Under the terms of that scheme, a plan fiduciary like OTET cannot sue for damages, even when it believes (as OTET does) that it has distributed benefits in violation of the plan. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1091 (9th Cir. 2012).

In *McDowell*, we invented an exception to this rule that circumvents both the enforcement scheme Congress created and the accompanying preemption clause. The plaintiff in *McDowell* was an ERISA health plan fiduciary that had paid over $30,000 in medical expenses arising out of a car accident between two plan participants and a third party. 385 F.3d at 1170. The plan contained a reimbursement provision that required plan participants to remit the proceeds of any settlement to the fiduciary "up to the amount of benefits paid." *Id*. When the participants, the McDowells, received a settlement from the driver of the other vehicle involved in the accident, the plan fiduciary sought to enforce the reimbursement provision. *Id*. at 1171. Because ERISA does not permit a plan fiduciary to sue for damages, the fiduciary filed a state-law breach of contract

suit, seeking damages for breach of the reimbursement clause of the plan. *Id.*

It is clear that a plan fiduciary has no remedy under ERISA in such a situation. An ERISA fiduciary cannot bring a damages suit to enforce an ERISA plan; it can sue only for equitable relief. *See* 29 U.S.C. § 1132(a)(3); *Bilyeu*, 683 F.3d at 1091. Nor can such a fiduciary bring a state-law breach of contract suit to enforce the terms of the ERISA plan, because such a suit would clearly "relate to an[] employee benefit plan" and thus be preempted. 29 U.S.C. § 1144(a). But the panel in *McDowell* reached the opposite conclusion. It held that, because enforcing the reimbursement provision "does not require interpreting the plan or dictat[ing] any sort of distribution of benefits," the fiduciary's contract suit did not "relate to" the plan and was not preempted. *McDowell*, 385 F.3d at 1172. The fiduciary, the panel explained, was "simply attempting, through contract law, to enforce the reimbursement provision." *Id.*

As then-Judge Thomas explained in his dissent from our failure to rehear *McDowell* en banc, the panel's conclusion was clearly wrong. *See id.* at 1175 (Thomas, J., dissenting from the denial of rehearing en banc). The fiduciary in McDowell was not merely trying to use state contract law to enforce a term in an unrelated contract. It was, in the panel's own words, "attempting, through contract law, to enforce the reimbursement provision . . . *incorporated into the[] ERISA plan.*" *McDowell*, 385 F.3d at 1172 (emphasis added). I do not see how it is possible to conclude, as the *McDowell* panel did, that a suit to enforce the terms of an ERISA plan does not "relate to" an ERISA plan.

*McDowell* and this case can be distinguished in two ways, but neither finds significant support in ERISA. The result in *McDowell* depends on the panel's claim that "[a]djudication of [the fiduciary's] claim does not require interpreting the plan or dictate any sort of distribution of benefits." *Id.* In this case, by contrast, as the panel opinion explains, OTET's breach of contract claim *both* requires interpreting the plan *and* turns on a provision that dictates the distribution of benefits. *See* Op. at 9. But the first distinction is entirely illusory, and the second is a distinction without a difference.

First, while it is true that OTET's contract claim requires interpreting the terms of the ERISA plan, the fiduciary's contract claim in *McDowell* did, too. The thrust of the fiduciary's claim in *McDowell* was that the ERISA plan required participants to remit "the proceeds of any settlement" that they obtained from third parties, and that the McDowells, by refusing to do so, had breached the plain terms of the plan. 385 F.3d at 1170. To adjudicate the fiduciary's claim, the district court would have been required to determine whether the withheld funds were, in fact, "proceeds" under the meaning of the ERISA plan. No one doubted that the funds were "proceeds," just as no one doubts here that Henderson and Jackson were not employees. As the panel opinion observes, the fact that an interpretive exercise is *de minimus* does not mean that interpretation is not required. It is true, in other words, that OTET's contract claim requires "interpreting the plan." *Id.* at 1172. But the panel in *McDowell* was wrong to state that the contract claim in that case did not also require "interpreting the plan."

The second distinction between this case and *McDowell* is hardly more convincing. The *McDowell* panel concluded that the reimbursement claim in that case was not

preempted because the fiduciary was not attempting to enforce a provision that would "dictate any sort of distribution of benefits." *Id*. at 1172. Here, by contrast, OTET is trying to enforce a provision that does implicate the payment of benefits. But I fail to see why this is a meaningful difference. It should not matter, if a litigant is attempting to enforce a provision in an employee benefits plan, whether the provision in question governs payments made from the trust to the participant (*i.e.*, a benefits provision) or payments made from the participant to the trust (*i.e.*, a reimbursement provision). Both are parts of the contract between the two parties. By arbitrarily deciding that a reimbursement provision may be enforced through a breach of contract damages suit, whereas a benefits provision may not, *McDowell* ignores the Supreme Court's repeated instructions that we may not discard the explicit terms of an ERISA plan. *See U.S. Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1548 (2013) ("The plan, in short, is at the center of ERISA.").

As Judge Thomas's dissent explained, the rule *McDowell* establishes is deeply problematic. Under *McDowell*, "insurers may sue plan participants for reimbursement based on provisions in the insurance contract, but . . . plan participants cannot file suits or counter-claims[] against insurers for breach of contract or bad faith in claim administration under the contract." *McDowell*, 385 F.3d at 1176 (Thomas, J., dissenting from the denial of rehearing en banc). That is, while plan fiduciaries may bring state-law claims against plan participants to enforce their rights under an ERISA plan (at least if they seek to enforce a reimbursement provision), plan participants may not bring state-law claims against plan fiduciaries to enforce their contractual rights under the same plan. "The impact of this decision is to provide a special exemption for one party while handcuffing the

other." *Id*. at 1177.  I do not believe that Congress intended this "harsh and anomalous" result.  *Id*. at 1176.

I concur in the panel's opinion because I agree that *McDowell* is narrowly distinguishable (if unconvincingly) from this case, and because we must distinguish *McDowell* if *McDowell* remains the law and we are to reach the correct result in this case.  But the underlying reality is that *McDowell* was wrongly decided.  We should take the opportunity to rehear this case en banc and overrule *McDowell*.