# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 12, 2021

Lyle W. Cayce
Clerk

No. 20-30126

Deborah Theriot,

*Plaintiff—Appellant*,

*versus*

Building Trades United Pension Trust Fund, *also known as* Pension Fund; Board of Trustees, The Building Trades United Pension Trust Fund,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-10250

Before Haynes, Higginson, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Deborah Theriot appeals the district court's dismissal of her benefits claim brought under Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. For the reasons below, we VACATE

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30126

the dismissal and REMAND to the district court with instructions to refer Theriot's claims to the pension plan to evaluate the merits of Theriot's claim.

## I.     Background

### A.     Factual Background

Theriot's mother, Audry L. Hamann, was the survivor beneficiary of her late husband's multi-employer ERISA plan (the "Plan"), which was sponsored and underwritten by the Building Trades United Pension Trust Fund (the "Pension Fund"). *Theriot v. Bldg. Trades United Pension Tr. Fund* (*Theriot I*), 394 F. Supp. 3d 597, 605–06 (E.D. La.), *reconsideration denied*, *Theriot II*, 408 F. Supp. 3d 761 (E.D. La. 2019). Mrs. Hamann had applied for post-retirement survival benefits and elected to receive a monthly annuity. *Id.* at 605. The Pension Fund approved Mrs. Hamann's application on March 1, 2017. *Id.*

Mrs. Hamann then sought to convert her monthly benefits to a lump sum payment, so the Pension Fund accordingly mailed Mrs. Hamann a change form to do so later in March 2017. *Id.* at 605–06. The change form noted that it must be completed and returned "by April 5, 2017 to receive the [lump sum] payment on May 1, 2017." *Id.* at 606. The Pension Fund received Mrs. Hamann's filled out change form on April 4, 2017. *Id.* The next day, Mrs. Hamann passed away. *Id.*

After Hamann's death, Theriot asked the Pension Fund about the lump sum payment. *Id.* The Pension Fund sent Theriot a letter on April 18, 2017, stating that she was not entitled to the payment (the "April 2017 letter"):

> Plan documents state that the Joint and Survivor benefit is payable for the survivor's lifetime. Therefore[,] the payment

2

> dated April 1, 2017 was the final payment Mrs. Hamann was eligible to receive from this Fund. The paperwork Mrs. Hamann submitted for a Lump Sum payment was for May 1, 2017 and would not be payable due to the fact that she was not living at that time.

*Id.* On November 1, 2017, Theriot's then-counsel sent a letter to the Pension Fund requesting "a complete copy of the plan agreement," with particular focus on "any language which states that once a beneficiary elects a lump sum payment . . . the beneficiary must be alive." Theriot alleged that the Pension Fund responded with only an incomplete copy of the Plan. *Id.* at 612.

On January 5, 2018, Theriot sent a letter to the Pension Fund "demand[ing] . . . the lump sum payment" owed to Mrs. Hamann. On March 2, 2018, the Pension Fund responded (the "March 2018 letter"). *Id.* The March 2018 letter stated that Theriot's request for review—the January 5, 2018, letter—"[wa]s untimely" because Article XIII, Section 3 of the Plan requires a request for review to be submitted within 60 days of a notice of denial, which was noticed on April 18, 2017. Due to the untimely request for review, the Pension Fund stated that it "reserve[d] the right to assert that [Theriot] . . . failed to exhaust administrative remedies" and that she had foreclosed her ability to seek judicial review. Attached to the March 2018 letter was a copy of the Plan's Article XII, Section 3, which provides the Plan's procedural requirements to exhaust administrative remedies.

Theriot did not request a review of the March 2018 letter. Instead, Theriot filed suit and sent two letters—one on November 2, 2018, and another on December 19, 2018—requesting the same documents that Theriot asked for a year earlier.

## B.   Procedural History

On October 31, 2018, Theriot sued the Pension Fund, raising five claims that the Pension Fund violated ERISA.  The district court rejected all of Theriot's claims: it dismissed two with prejudice for failure to exhaust administrative procedures, *Theriot I*, 394 F. Supp. 3d at 625; it dismissed another two without prejudice for failure to state a plausible claim for relief, *id.*; and it dismissed the last—a discovery claim—with prejudice on summary judgment, *Theriot v. Bldg. Trades United Pension Tr. Fund* (*Theriot III*), No. 18-10250, 2019 WL 5693045, at *15 (E.D. La. Nov. 4, 2019), *reconsideration denied*, *Theriot IV*, No. 18-10250, 2020 WL 474960 (E.D. La. Jan. 29, 2020).  The district court denied Theriot's motions for reconsideration.  *See Theriot II*, 408 F. Supp. 3d at 786; *Theriot IV*, 2020 WL 474960, at *1.  Theriot timely appealed.

## II.   Legal Framework

The crux of this appeal concerns ERISA's requirement that claimants seeking benefits from an ERISA plan first exhaust administrative remedies available under the plan before bringing suit.[1]  To understand what is at issue, we first summarize the relevant ERISA provisions and regulations and the Plan's administrative review requirements.

---

[1] Theriot's appeal of the discovery claim—that the Pension Fund failed to timely produce requested plan documents in violation of ERISA, 29 U.S.C. § 1024(b)(4) and that she is therefore entitled to penalties under 29 U.S.C. § 1132(c)—becomes relevant only if we conclude that her suit in federal court was appropriate and consider the merits of her ERISA benefits claim.  *See Theriot III*, 2019 WL 5693045, at *1.  Because we vacate the district court's dismissal and remand to have the merits of Theriot's benefits claim considered in the first instance by the Pension Fund, we need not, and do not, address the merits of Theriot's discovery claim.  *See infra* Section IV.

No. 20-30126

## A.    ERISA's Claims Procedure

Under ERISA, every employee retirement plan must establish a claims procedure.    29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.    That procedure must provide for adequate written denials of claims.  29 U.S.C. § 1133(1).  An adequate written denial must, "in a manner calculated to be understood by the claimant," provide the following information:

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and]
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures . . . .

29 C.F.R. § 2560.503-1(g)(1)(i)–(iv).  Plan administrators must also issue such notice in a timely manner: a written denial must be provided "within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan." [2]  *Id.* § 2560.503-1(f)(1).

In addition to adequate notice, the benefit plan must also offer a reasonable opportunity for "full and fair review" of the denial—that is, it must allow for an administrative appeal.  29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1(h).  As part of this review procedure, the plan administrator

---

[2] A plan administrator may provide the notice after 90 days if "special circumstances require an extension."  29 C.F.R. § 2560.503-1(f)(1).  However, in those instances, the plan administrator must provide a written notice of the extension to the claimant. *Id.*

must provide a claimant "at least 60 days following receipt of" the denial notice to appeal the determination. 29 C.F.R. § 2560.503-1(h)(2)(i). If the claimant timely appeals, then the plan administrator must notify the claimant of the plan's decision on the appeal no later than 60 days after the claimant's request for review. *Id.* § 2560.503-1(i)(1)(i). Alternatively, ERISA regulations impose a different timeline if an ERISA plan chooses to resolve appeals through a regularly-meeting committee: if the plan provides for that form of review, the administrator must resolve an appeal "no later than the date of the meeting" and must notify the claimant of the committee's decision "as soon as possible, but not later than 5 days after the benefit determination is made." *Id.* § 2560.503-1(i)(1)(ii).

The denial notice for any appeal must include similar information as that required in an initial denial notice: the "specific reason" for the denial with reference to the "specific plan provision[]"; a statement that the claimant may receive reasonable access to all information relevant to the claimant's claim; and a "statement describing any voluntary appeal procedures offered by the plan." *See id.* § 2560.503-1(j)(1)–(4).

In general, to bring an ERISA claim in court, the claimant must exhaust the administrative remedies laid out in the benefits plan. *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). If the plan administrator fails to issue a "substantially compliant" initial denial notice, then the administrative appeal period does not run. *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 255, 257 (5th Cir. 2005) (per curiam). Moreover, if the plan administrator failed to establish or follow claims procedures consistent with ERISA's requirements, a claimant is excused from failing to exhaust administrative remedies: the claimant is "deemed to have exhausted the . . . remedies." 29 C.F.R. § 2560.503-1(*l*)(1) (the "deemed exhaustion" provision).

## B.     The Plan's Claims Procedures

The Plan provides its notice and administrative review procedures in Article XIII, Section 3.  The structure the Plan lays out generally follows ERISA's notice procedures.  The Administrative Manager or the Eligibility Committee of the Trustee provides the initial written notice in accordance with ERISA regulations.  If the claim is denied, the Plan provides two additional layers of review.  First, the claimant may request review of a denied claim by notifying the Plan's Eligibility Committee "[w]ithin 60 days after the receipt" of the denial notice.  If a request for review is submitted, the Plan provides that the Eligibility Committee shall notify the claimant of its decision "within 60 days after receipt" of the request.[3]  Second, the claimant may then request review of the Eligibility Committee's decision by requesting review by the Executive Committee within 60 days after receipt of the Eligibility Committee's decision.  In turn, the Executive Committee must notify the claimant of its decision within 60 days of receipt of the request for review.  The Executive Committee's decision exhausts a claimant's administrative remedies and the claimant may pursue legal action in court.

## III.     Discussion

Under this ERISA framework, we turn to Theriot's exhaustion arguments.  The district court dismissed Theriot's claims for failure to timely exhaust the Plan's 60-day request-for-review requirement.  *Theriot I*, 394 F. Supp. 3d at 618, 621–22.  Concluding that Theriot's January 5, 2018, letter was a request for review, it held that (1) the Pension Fund substantially

---

[3] We note that the Plan does not include the alternate deadline for regularly-meeting committees that review benefits claims even though the Eligibility Committee is a regularly-meeting committee. *See* 29 C.F.R. § 2560.503-1(i)(1)(ii).

complied with ERISA's notice requirement in its March 2018 letter, (2) that letter initiated the Plan's administrative review process, and (3) Theriot failed to timely appeal that letter within 60 days. *Id.* at 616–17. The district court further held that the Pension Fund's initial failure to substantially comply with ERISA's notice requirement in its April 2017 letter and ERISA's 90-day notice deadline did not excuse Theriot from failing to timely exhaust the Plan's 60-day request-for-review requirement. *Theriot II*, 408 F. Supp. 3d at 774–75.

Theriot contests the district court's holdings. She contends that the March 2018 letter did not substantially comply with ERISA and thus did not trigger the 60-day appeal period. Alternatively, Theriot contends that she should have been excused from exhausting administrative remedies because the Pension Fund failed to follow ERISA's claims procedure.

We review de novo the district court's dismissal and denial of reconsideration. *Christiana Tr. v. Riddle*, 911 F.3d 799, 802 (5th Cir. 2018) (providing the standard of review for a dismissal); *Fletcher v. Apfel*, 210 F.3d 510, 512 (5th Cir. 2000) (noting that de novo review applies when, as here, the underlying reconsideration motion was "solely [one] to reconsider a judgment on its merits"). To survive a motion to dismiss, the claimant must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Under this legal standard, we agree with Theriot on both arguments.

## A.    Substantial Compliance of the March 2018 Letter

Assuming arguendo that the March 2018 letter was a denial of an appeal,[4] we hold that the March 2018 letter failed to substantially comply with ERISA's requirement that the denial notice "describ[e] any voluntary appeal procedures offered by the plan."  29 C.F.R. § 2560.501-1(j)(4).

The denial notice need only "substantially compl[y]" with ERISA's requirement that the notice describe the available administrative remedies. *See Lacy*, 405 F.3d at 256–57.  A denial notice substantially complies with ERISA if it fulfills the purpose of ERISA § 1133, which is to afford the claimant "an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 154 (5th Cir. 2009) (internal quotation marks and citation omitted).  In doing so, we "consider[] all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Id.* (quotation omitted).

Considering all of the Pension Fund's communications with Theriot, we conclude that the Pension Fund did not provide Theriot a sufficient explanation of her available administrative appeal rights.  This is an unusual case because the letter itself says one thing, while the Plan's review procedures, attached to the March 2018 letter suggest another.  Construing any ambiguities in Theriot's favor, as we should at this stage, *see Iqbal*, 556 U.S. at 678, the letter itself actively discouraged Theriot from seeking administrative review.  Citing the Plan's review procedures, the Pension

---

[4] The parties dispute whether the March 2018 letter was a denial of an appeal. However, we need not resolve this issue to answer the question of whether the March 2018 letter sufficiently complied with ERISA.  Even taking the Pension Fund's position—that the letter was a denial of an appeal—we conclude that the letter does not comply with ERISA's requirements.

No. 20-30126

Fund noted that Theriot's request for review was "untimely," that the Pension Fund "reserve[d] the right to assert that [she] . . . failed to exhaust administrative remedies," and that Theriot's untimely request for review "foreclose[d] the ability to seek judicial review." This active discouragement conveyed to Theriot that she had no further recourse on her claim—the opposite of what ERISA requires. *See* 29 C.F.R. § 2560.503-1(j)(4) (requiring that a denial notice on appeal include a "statement describing any voluntary appeal procedures offered by the plan").

The Pension Fund's arguments to the contrary are unavailing. It argues that *Meza v. General Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir. 1990), and *McGowan v. New Orleans Employers International Longshoremen's Ass'n*, 538 F. App'x 495, 498 (5th Cir. 2013) (per curiam), support its claim that, by attaching the Plan's review procedures, it satisfied ERISA's requirement that denial notices include a description of the Plan's review procedures. Both cases are distinguishable.

In *Meza*, the claimant argued that he lacked notice of the applicable administrative procedures because the plan administrator did not provide him with a plan summary. 908 F.2d at 1278. Meza thus argued that he was not required to exhaust his administrative remedies and could pursue his ERISA claim in federal court without ever having applied to the plan administrator for pension benefits. *Id.* at 1278–79. We rejected that argument because allowing Meza "to make his *initial* claim for pension benefits by filing a lawsuit would undermine the policies underlying the exhaustion requirement," which seeks to encourage claimants to obtain their benefits through the administrative route. *Id.* at 1279 (emphasis added). We thus held that ERISA "require[s] claimants to make some attempt at obtaining their benefits through the administrative route, or, at the very least, to make some effort to learn of the procedure applicable to them." *Id.*

Accordingly, *Meza* stands only for the proposition that claimants are not excused from seeking out administrative remedies solely due to lack of knowledge rather than being misled. Unlike Meza, Theriot made her initial claim to the Pension Fund; she thus made "some attempt" to obtain her benefits through the administrative route. *Id.* Even if we were to accept that *Meza* stands for a broader proposition, it does not stand for the proposition required here—that a claimant must determine what administrative remedies remain available after a plan administrator denies her claim on appeal and actively discourages her from seeking further administrative recourse. Therefore, *Meza* is distinguishable from this case.

*McGowan* is distinguishable, as well. In that case, the claimant argued that the plan administrator's termination letter failed to include a description of the plan's review procedures when the letter "did not explicitly state that McGowan had 180 days to file a written appeal" and instead attached "a copy of the Plan and stated that [his] 'post-appeal rights [we]re set forth on pages 36–39 of the enclosed Summary Plan Description booklet.'" 538 F. App'x at 498. We disagreed and held that the letter substantially complied with ERISA's notice requirement. *Id.* It "notified McGowan of his right to file suit under ERISA" and specified the page numbers in an attached booklet that provided for the administrative review procedures. *Id.*

Although it is true that the March 2018 letter attached a copy of the Plan's administrative review procedures, the similarities between *McGowan* and this case end there. The March 2018 letter did not inform Theriot of her right to follow the Plan's administrative process. In contrast to the *McGowan* letter—which stated that the claimant's "post-appeal rights [we]re set forth on pages 36–39"—the March 2018 letter stated that Theriot's request for review was "untimely" and that her "ability to seek judicial review" was "foreclose[d]." *See id.*

In sum, neither *Meza* nor *McGowan* stands for the proposition that attaching a plan's administrative review procedures to a denial letter worded like this one is sufficient to substantially comply with ERISA's notice requirement. The case of *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012), presents a more analogous fact pattern and, therefore, is persuasive.

In *Bilyeu*, the claimant received a termination letter stating that she could either provide additional information to support her request for disability benefits or appeal the decision—and that she had to take either action within 180 days of receiving the letter. *Id.* at 1089. The claimant interpreted the letter as presenting two mutually exclusive options and timely took the first option. *Id.* After the 180-day appeal period passed and the claimant received no response from the plan administrator regarding the additional information she submitted, the claimant filed suit. *Id.* at 1087. The plan administrator moved to dismiss, arguing that the claimant failed to exhaust administrative remedies because she did not timely appeal her termination within 180 days. *Id.* at 1088. The plan administrator argued that the termination letter stated that both options *were not* mutually exclusive and that either option, if taken, had to be taken within 180 days. *Id.* at 1089. The Ninth Circuit held that, because the letter was "ambiguous" and reasonably susceptible to both the claimant's and plan administrator's interpretation, the plan administrator failed to comply with ERISA and that the claimant was therefore excused from failing to timely exhaust her administrative remedies.[5] *Id.* at 1088–89. In so holding, the Ninth Circuit emphasized that

---

[5] The Eleventh Circuit has held the same in a similar situation. *See Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207–08 (11th Cir. 2003) (holding that the plaintiff's ERISA claim was not barred for failure to exhaust administrative remedies because the plaintiff reasonably believed that she was not required to exhaust remedies

"communication from a claims administrator to a plan participant should clearly apprise her of her rights and obligations under the plan." *Id.* at 1089.

Similarly, the March 2018 letter here is at least reasonably susceptible to Theriot's interpretation that the letter communicated that she had no appeal rights available. Because the letter is (at least) ambiguous on the subject, we cannot hold that the March 2018 letter substantially complied with ERISA's notice requirement: a denial letter that is ambiguous about a claimant's appeal rights does not "afford the [claimant] an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial."[6] *Lafleur*, 563 F.3d at 154 (internal quotation marks and citation omitted).

---

before filing suit, as her summary plan description stated that participants "may use" the administrative appeal procedure if their claim is denied).

[6] Further, we reject the Pension Fund's argument that, because Theriot was represented by counsel, she should be held to a higher standard than a claimant without counsel. We recognize that the *Bilyeu* court observed that the claimant lacked representation and therefore the letter "should have been[] much clearer." *Bilyeu*, 683 F.3d at 1089. But three reasons persuade us to reject the Pension Fund's argument. First, the plain language of ERISA regulations requires the denial notice to be written "in a manner calculated to be understood *by the claimant*." 29 C.F.R. § 2560.503-1(g), (j) (emphasis added). Second, ERISA does not impose a higher standard for claimants represented by counsel, and the Pension Fund provides no support for its position that it ought to. Lastly, our less stringent standard for pro se litigants applies to only the standard required under Federal Rule of Appellate Procedure 28 for presenting arguments on appeal. *See Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam). Unlike argument-writing, something common to litigation attorneys, ERISA is "an enormously complex and detailed statute," *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993), that is "one of the most difficult areas of law to understand," Colleen C. Donnelly, CIGNA Health Plan of Louisiana, Inc. v. Louisiana*: Unwilling to Save Louisiana's Any Willing Provider Statute from ERISA Preemption*, 42 Vill. L. Rev. 1255, 1264 (1997) (internal quotation marks and citation omitted). In short, we reject the assertion that a notice can be made ERISA-compliant simply because the plaintiff had a lawyer look at the document.

Accordingly, we hold that the March 2018 letter did not substantially comply with ERISA's requirement that it describe the Plan's administrative review procedures to Theriot.[7]

## B.    Excusal of Administrative Exhaustion

Even if we assume that the March 2018 letter substantially complied with ERISA, we hold that Theriot is nonetheless excused from having failed to timely exhaust the Plan's administrative remedies thus far. The Pension Fund concedes that it did not provide a substantially compliant notice of denial within 90 days of receiving Theriot's inquiry into the lump sum payment in April 2017. We hold that the Pension Fund's failure to do so excused Theriot from the timing issues the Pension Fund relies upon. *See* 29 C.F.R. § 2560.503-1(*l*)(1).

In so holding, we reject the Pension Fund's argument that *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533 (5th Cir. 2007), *abrogated on other grounds by Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242 (2010), provides that a plan administrator may perfect a noncompliant denial notice at any time during the administrative process. In that case, the claimant went through the plan administrator's three-step administrative review process for a claim for benefits. *Id.* at 535–57. The first two levels of review failed to substantially comply with ERISA, but the final review did comply, and the plan administrator denied the claimant's request for benefits. *Id.* at 537, 539–40. The claimant then sued the plan administrator, arguing that the plan administrator's failure to substantially comply with ERISA at the first two levels of review justified his

---

[7] Because we conclude that the March 2018 letter did not substantially comply in this regard, we need not, and do not, address Theriot's other arguments for why the March 2018 letter was substantially noncompliant.

request for benefits. *Id.* at 538. We held that the claimant was not entitled to damages because the plan administrator's final review provided the claimant with a full and fair review of his claims and therefore satisfied the purpose of ERISA's claims procedure—"to encourage resolution of the dispute at the administrator's level before judicial review." *Id.* at 540.

Therefore, in *Wade*, the claimant obtained a substantive review of his claim and we addressed whether a plan administrator's failure to timely comply with ERISA subjected it to a substantive damages remedy. *See id.* Importantly, *Wade* was *not* a case where the fund was alleging that the plaintiff had failed to timely exhaust remedies. Of course, here, that is the crux of the argument. Further, Theriot received no substantive review at all[8]—which means that the Pension Fund is effectively asking us to extend *Wade* to a fact pattern not merely distinguishable from but directly opposite to the facts in that case. We decline the invitation to expand *Wade* in that way and therefore reject the premise that a plan administrator's failure to timely comply with ERISA can limit a claimant's available administrative remedies and bar substantive review of the claimant's claims. To do so would conflict with the clear language and purpose of ERISA's claims procedure regulations. *See Anthony v. United States*, 520 F.3d 374, 380–82 (5th Cir. 2008) (interpreting agency regulations by considering the regulations' plain language and purpose).

ERISA regulations provide clear timing deadlines for notifications. For instance, the regulations state: "[T]he plan administrator *shall* notify the claimant . . . of the plan's adverse benefit determination within a reasonable period of time, *but not later than 90 days* after receipt of the claim . . . ." 29

---

[8] Theriot received a noncompliant initial denial letter in April 2017, followed by the March 2018 letter that stated that she failed to timely exhaust administrative remedies.

C.F.R. § 2560.503-1(f)(1) (emphasis added).  The regulations further state that even if special circumstances warrant an extension, "[*i*]*n no event* shall [that] extension exceed a period of 90 days from the end of such initial period." *Id.* (emphasis added).  Just as clear is ERISA's deemed-exhaustion provision, which states:

> [I]n the case of the failure of a plan to . . . follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under [ERISA's civil enforcement provision].

*Id.* § 2560.503-1(*l*)(1).  ERISA regulations provide no remedial measures for plan administrators that fail to comply with these requirements.

The preamble to the ERISA regulations that added the deemed-exhaustion provision is particularly instructive.  The Department of Labor recognized that the deemed-exhaustion provision would "impose unnecessarily harsh consequences on plans that substantially fulfill the requirements of the regulation, but fall short in minor respects."  Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246, 70,255 (Nov. 21, 2000) (codified at 29 C.F.R. § 2560.503-1) [hereinafter ERISA regulations].  Nonetheless, the agency imposed the provision to provide "the minimum procedural regularity that warrants imposing an exhaustion requirement on claimants." *Id.* at 70,256.

It would run afoul of these clear timeliness requirements to hold that the Pension Fund may cure its defective denial notice after the relevant

deadlines have passed—let alone that it may cure it 242 days late.[9]  *See Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1004 (7th Cir. 2019) (holding that ERISA regulations impose strict deadlines that a plan administrator must abide by, as "[s]ubstantial compliance with a deadline requiring strict compliance is a contradiction in terms").  Even more, it would be unjust to excuse the Pension Fund from its mishaps while holding Theriot to every jot and tittle.  Indeed, relying on ERISA regulations' clear language and the Department of Labor's intent, other circuit courts that have addressed this question have held that the deemed-exhaustion provision kicks in when a plan administrator fails to strictly comply with ERISA's notice deadlines.[10]  *Fortier v. Hartford Life & Accident Ins. Co.*, 916 F.3d 74, 83–84 (1st Cir. 2019); *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221–23 (2d Cir. 2006); *Fessenden*, 927 F.3d at 1003–04; *Barboza v. Cal. Ass'n of Pro. Firefighters*, 651 F.3d 1073, 1078–80 (9th Cir. 2011).  We need not reach

---

[9] Because of the Pension Fund's extensive delay in issuing a substantially compliant denial notice, we observe that deeming administrative remedies exhausted would not be "unnecessarily harsh" in this case, even though the Department of Labor recognized that the deemed-exhaustion provision could incur such consequences.

[10] Courts have only excused plan administrators from ERISA's strict deadlines in the limited instance where the plan administrator had engaged in "ongoing" information gathering with the claimant. *Jebain v. Hewlett-Packard Co. Emp. Benefits Org. Income Protection Plan*, 349 F.3d 1098, 1107 (9th Cir. 2003) (observing that violations of ERISA deadlines would be excused if there was "ongoing, good faith exchange of information" between the plan administrator and the claimant); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 636 (10th Cir. 2003) (holding that the substantial compliance doctrine applies for ERISA's timing regulations only if "there is an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed as to the status of the claim and the kinds of information that will satisfy the administrator").  However, no such excuse is available here, as the Pension Fund did not engage in communications with Theriot after mailing the noncompliant April 2017 letter.

No. 20-30126

the question of whether failure to strictly comply will always defeat a failure to exhaust argument because of the extreme facts in this case.[11]

Moreover, even if we were to conclude that the Pension Fund's argument about Theriot reinitiating the process was persuasive, the Pension Fund again failed to comply with ERISA's regulatory deadlines when it issued the March 2018 letter. For reviews made by a regularly-meeting committee, like the Eligibility Committee, the plan administrator must notify the claimant of the committee's determination of the claimant's request for review "not later than 5 days after the benefit determination," which must be made "no later than the date of the meeting." 29 C.F.R. § 2560.503-1(i)(1)(ii). The Eligibility Committee met and considered Theriot's January 5, 2018, letter on February 20, 2018. The Pension Fund was thus required to notify Theriot by February 25, 2018. But it notified Theriot 5 days later, on March 2. Therefore, the Pension Fund's arguments fail on a number of levels.[12]

## IV.    Conclusion

In sum, we hold that the district court erred in dismissing Theriot's claims for failure to exhaust administrative remedies. That said, given the

---

[11] The Pension Fund suggests that these cases do not apply because Theriot reinitiated the administrative process with her January 5, 2018, letter. But nothing in the regulatory text or history supports this position. To the contrary, the Department of Labor made clear that the deemed-exhaustion provision seeks to ensure that a plan does not "effectively deny a claimant access to the administrative review process mandated by [ERISA]." ERISA Regulations, 65 Fed. Reg. at 70,256.

[12] The Pension Fund argues that Theriot forfeited the 5-day notice requirement because she did not raise this argument until her first post-judgment reconsideration motion. However, Theriot moved for reconsideration under Federal Rule of Civil Procedure 54(b). *See Theriot II*, 408 F. Supp. 3d at 765. A district court may consider new arguments under such motions. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336–37 (5th Cir. 2017). Theriot thus did not forfeit this argument.

road that has been travelled in this case, we conclude that the best remedy is to place the case back to where it should have been: with a proper administrative review.  Although we could remand for the district court to conduct a benefits determination in the first instance, "[s]uch court determinations are disfavored." *Bourgeois*, 215 F.3d at 482.  "[T]he better course [is] to refer the claim to the benefits committee for an initial benefits determination." *Id.*; *see also Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000) (Alito, J.) (noting that when a denial letter does not comply with ERISA's statutory and regulatory requirements, the remedy "is to remand to the plan administrator so the claimant gets the benefit of a full and fair review").  Consequently, we VACATE the dismissal and REMAND to the district court with instructions to refer Theriot's claims to the Eligibility Committee for an initial benefits determination on the merits without consideration of the limitations defense.

No. 20-30126

ANDREW S. OLDHAM, *Circuit Judge*, dissenting:

This should have been a simple case. When denying an ERISA claim, a plan must provide to the claimant "[a] description of the plan's review procedures and the time limits applicable to such procedures . . . ." 29 C.F.R. § 2560.503-1(g)(1)(iv). It is undisputed that the plan did that. In its March 2, 2018 letter, the plan enclosed the relevant review procedures. It described the time limits applicable to such procedures. And it pointed the claimant to the relevant section of the plan *three times* in its cover letter. *See* Letter from Michael Gantert, Pension Fund Dir., to Zachary J. Ardoin, Pl.'s Att'y at 1 (Mar. 2, 2018) (hereinafter Mar. 2, 2018 Letter). ("*Under Article XIII, Section 3, of the Plan* a written request for review must be filed within 60 days after receipt of a determination."); *id.* at 2 ("[T]he Fund reserves the right to assert that the claimants have failed to exhaust administrative remedies *in accordance with Article XIII, Section 3 of the Plan*."); *id.* at 3 ("Enclosed find a copy of *Article XIII, Section 3, from the Plan Document*.") (all emphases added).

So why does the plan lose? Because, in the majority's view, the plan "conveyed" "active discouragement" that suggested the claimant "had no further recourse on her claim." *Ante*, at 10.

There are at least three problems with that. First, neither ERISA nor its implementing regulations prohibit "active discouragement." The majority's holding—that such "active discouragement" vitiates a plan's denial letter—is conspicuously unaccompanied by a citation to anything. The law only requires the plan to describe its review procedures. *See* 29 C.F.R. § 2560.503-1(g)(1)(iv). The plan did that.

Second, the law also requires the plan to provide "[t]he specific reason or reasons for [its] adverse determination" and "[a] description of any additional material or information necessary for the claimant to perfect the

No. 20-30126

claim." *Id.* § 2560.503-1(g)(1)(i) & (iii). That is, the plan must provide an explanation for its denial and an explanation for how the claimant can fix the problem (if it can be fixed). That is exactly what the plan did here. The plan said Theriot failed to exhaust her remedies, and that there's nothing she could do to fix it:

> Under Article XIII, Section 3, of the Plan a written request for review must be filed within 60 days after receipt of a determination. Ms. Theriot and Mr. Panebiango were advised in writing on April 18, 2017 and May 19, 2017, respectively of the Fund's determination concerning continued benefits meaning your letter of January 5th, 2018, is untimely. Because the request for review for the Estate, Ms. Theriot and Mr. Panebiango are untimely, the Fund reserves the right to assert that the claimants have failed to exhaust administrative remedies in accordance with Article XIII, Section 3 of the Plan. This forecloses the ability to seek judicial review.

Mar. 2, 2018 Letter, at 1–2. This paragraph accurately describes the plan's position—as § 2560.503-1(g)(1)(i) & (iii) require. The plan was legally obligated to explain the basis for its belief that claimants failed to exhaust their administrative remedies. And the plan is 100 percent correct that failure to exhaust administrative remedies forecloses judicial review. *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).

Third, the majority is wrong that the plan "actively discouraged Theriot from seeking administrative review." The plan simply reserved its rights to assert an exhaustion defense: "[T]he Fund reserves the right to assert that the claimants have failed to exhaust administrative remedies in accordance with Article XIII, Section 3 of the Plan." Mar. 2, 2018 Letter, at 2. The plan would have no reason to reserve its rights if the case was already over. In fact, such a reservation of rights communicates to Theriot that the

21

No. 20-30126

case is *not* over. And when accompanied by an express invocation of the plan provision explaining how Theriot can litigate the question, it is quite clear the plan was anticipating litigation not foreclosing it.

\*　　\*　　\*

ERISA is a byzantine statute that has spawned even more byzantine regulations. This area of law is complicated enough without courts adding new requirements that exist nowhere in the statute passed by Congress or regulations promulgated by the Secretary of Labor. I respectfully dissent.